———o———

LOUISA F. GRAYSON, *et al.*, Plaintiffs in Error, *vs.* JOEL WEDDLE, *et al.*, Defendants in Error.

1. *Joint Administrator—Failure to act—Presumption as to cause of.*—Where one of two administrators originally appointed, never, so far as shown, takes any part in proceedings in probate, and the record is silent as to the reason, the court will presume that some cause, sufficient in law, prevented his co-operation.

2. *County court—Foreclosure of mortgages by—Powers as to—Effect of—Ejectment.*—County courts have no jurisdiction to foreclose mortgages, except such special powers as are entrusted to them by section 6, art. VI, of the Administration Law (Wagn. Stat., 94), though that section will not prevent the mortgagee from presenting his claim, waiving the mortgage and asking for a sale ; but in such ease only the equity of redemption can be sold.　And the heirs of the mortgagor cannot maintain ejectment.

63 523
41a 546

63 523
103 666
105 476

63 523
113 98
116 499

63 523
125 289

63 523
130 219

63 523
139 178

63 523
168 9 31

63 523
176 8 327

3. *Administrator—Petition of, for sale of land—Loss of—Contents—Proof as to by parol.*—Upon proof of the loss of an administrator's petition for the sale of land, filed in the probate court, its contents may be proved by parol. Sections 14 and 15, of the act touching public records (Wagn. Stat., 1137), were not intended to do away with such testimony.

4. *Administration.—Petition for sale of land—Exhibition of list of debts and effects of estate—Notice to produce—Waiver of.*—A creditor desiring the sale, under order of a probate court, of real estate of decedent, is not obliged himself to exhibit a list of debts and inventory of effects of the estate. On notice from him of such desire, that duty devolves on the administrator.

And where the latter is personally present when the creditor presents a petition asking for such sale, and joins therein or presents a separate one for the same object, he thereby waives notice.

5. *Administration—Sale of land by reason of insufficiency or of personalty—Notice of sale—Failure to appeal afterward—Effect of.*—Where it appears that the probate court finds personal property insufficient to pay the debts of the deceased, and so orders the sale of real estate, and the parties in interest are notified of the application for the sale of the land, and take no appeal, the finding of the court is as to them conclusive.

6. *Administration—Order of sale—Allowance of mortgage note—Omission of by inadvertence—Effect on title of purchaser at sale.*—Where by inadvertence the debt shown by a mortgage note was not allowed at the date of an order made by the probate court, for the sale of the mortgaged property, but the same was afterwards, and before the sale, allowed, the court held that although the debts referred to in the statute (Wagn. Stat. 95, § 22), authorizing sale of land on petition, etc., may have been allowed demands, the omission was at best a mere irregularity which would not affect the title of a purchaser at the sale.

7. *Probate court—Petition for sale of land—Jurisdiction of court, how acquired.*—By the presentation to the court of probate of a petition for sale of lands of decedent, the court acquires jurisdiction of the subject matter, whether the application be accompanied by the exhibits and accounts required or not.

8. *Administration—Sale of land—Approval of by court—What action tantamount to.*—On a petition of an administrator, the probate court ordered the sale of certain lands to pay the debts of the deceased. Afterwards an entry appeared on its records that the report of sale was "received and ordered to be spread upon the records." Repeated annual settlements and a final settlement were subsequently had with the administrator, in which the proceeds of the sale were accounted for, and a deed of the land was made to the representatives of the purchaser, and all were submitted to and approved by the court. And no re-sale was ordered. *Held*, that the action of the court must be considered as an approval of the sale, although no formal entry of such approval appeared.

9. *Administrator—Purchase of land by attorney of and connected with—Not investigated in ejectment.*—The attorney of an administrator who gives fair value

and buys in good faith, may purchase at sale of land of the deceased. And the facts, if any, which might induce a court of equity to set aside such a sale, would not be investigated in an action of ejectment.

10. *Administration—Deed, correction of by administrator de bonis non—Eject-ment—Reform of deed—Amendment to answer, etc.*—No authority under the statute (Wagn. Stat. 98, ¿ 36), is given to the probate court to appoint an administrator *de bonis non* for the sole purpose of correcting a mistake in a deed of the original administrator, but a court of equity will reform such deed on appropriate issues framed for that purpose; and where in ejectment defendant shows such mistake and correction, the Supreme Court will, on appeal, remand the case, and defendant may then amend his answer so as to authorize the court to make the proper correction.

### Error to De Kalb Circuit Court.

*Samuel T. Loring*, for Plaintiffs in Error.

I. The application for the sale of said decedent's lands must be by petition, setting forth whatever under the statutes is required to give the court jurisdiction of the particular case and subject matter thereof, which should be so set forth as to be good on demurrer.

The application must show a true account of amounts due to and by the estate, a correct description of the real estate, and of the character and value of the personalty. It should appear therein that the land belonged to the deceased at his death; that petitioners are administrators or executors, or creditors; or persons having a direct, pecuniary interest. Jurisdiction in these cases will not be presumed. (Ror. Jud. Sales, p. 100, § 260.) As to the petition and its contents, see Wagn. Stat. 94, § 10; p. 96, §§ 22, 23; Schell vs. Leland, 45 Mo. 294; Adams vs. Larrimore, 51 Mo. 131; Grignon, Lessee, vs. Astor, 2 How. [U. S.] 338; Cooper vs. Sunderland, 4 Iowa, 114; Griffith vs. Frazier, 8 Cr., 23; Florrentine vs. Barton, 2 Wal. [U. S.] 215.

Neither Ensworth's testimony nor that of Rose showed that the contents of either petition were sufficient to give the court jurisdiction over the land. Hence, the action of the court was *coram non judice* and null and void.

II. The record does not show that at the date of the petition either Vories, Woodson, or Ensworth were creditors of James Morgan's estate.

III. The record fails to show that a petition for the sale of the land was filed in court, by the administrator. If it was, the record shows that it was not acted on.

IV. The order of sale of November 7th, 1864, refers to an order, made at the October term, for publication of notice of the application for order of sale, and to the publication thereof. But the record shows no such order at the October term, and there is no proof of notice outside of the order of November. Hence, plaintiffs were never properly brought into court, and the order of sale was null and void. (Wagn. Stat. 96, §§ 26, 27 ; Pattee vs. Mowry, 59 Mo. 164.)

V. Prudence Morgan was appointed administratrix. There is no evidence that she was not during all the time acting as such. Hence, the court had no authority to order Banter alone to sell. (Gregory vs. McPherson, 13 Cal. 562 ; Wortman vs. Skinner, 1 Beasl. 538.)

VI. The report and record show that the sale was made in obedience to an order of said court, made at its February term, 1865. But the record shows that the court made no order at that term. For that reason the sale was null and void.

VII. The record shows that at the May term, 1865, said probate court did not approve said sale by the administrator. The court used the following language: " Said report is received by the court and ordered to be spread upon the record." Such language was insufficient to show an approval.

VIII. Moore was the hired attorney of· the estate of James Morgan, deceased, sworn to protect its interests. He pretended to purchase the lands in controversy for $3,600, ($1,200 down, $1,200 in six, and the balance in twelve months from sale,) from the administrator at private sale, and immediately sells it for over $6,000, receiving nearly $4,000 in cash, and the balance upon the same terms that he bought it. This transaction was not only fraudulent in law, but was fraudulent *per se*. Moore is in no condition to invoke the interposition of a court of consci-

ence. (Hall vs. Vorhies, 45 Mo. 559 ; Thornton vs. Irwin, 43 Mo. 163 ; Grumley vs. Webb, 44 Mo. 445.) The defendants have no higher rights than Moore had. The record of the probate court imparted notice to both of these defendants, of the fraudulent and infamous transactions between Moore and the administrator.

IX. The court erred in appointing Brown administrator *de bonis non*, without notice to the parties interested, and more than five years after Banter's final settlement; and certainly it erred in ordering him, Brown, then to execute a deed to Moore's heirs.

*H. K. White, with J. D. Strong,* for Defendants in Error.

I. The evidence shows that defendants, in possession through *mesne* conveyances, claim under Wm. Moore, purchaser at an administrator's sale of lands belonging to plaintiff's ancestor, James Morgan. This sale was made to satisfy a mortgage, made by said Morgan, in his life time, to secure Silas Woodson, H. M. and A. H. Vories, and Ensworth, a debt due them, and to pay off other debts against his estate. Defendants therefore are in equity assignees of said mortgage and in possession, and the plaintiffs, who are heirs to the mortgagor, cannot maintain ejectment. They must resort to a bill to redeem. (Honaker vs. Shough, 55 Mo. 472 ; Jones vs. Mack, 53· Mo. 147 ; Jackson vs. Magruder, 51 Mo. 55.)

II. Secondary evidence of Ensworth and Rose as to the contents of the petitions of the mortgage creditors and of Banter, the administrator, for sale of the lands to satisfy the mortgage debt and other debts, was proper. The act of 1870–72 (Wagn. Stat. p. 1137), is cumulative and not exclusive. (McLean vs. Winchester, 17 Mo. 49.)

III. Plaintiffs contend that the county court had no jurisdiction to order sale of lands to pay the debts, because, as he alleges, the evidence fails to show that the petition described the lands in dispute, and did not identify them with the lands in controversy. The record shows that the petitions were filed. The testimony of the probate judge shows that the petitions were lost; that they

were in due form, and contained a statement of all the facts necessary, and were accompanied by proper inventory and statements of account, is shown beyond cavil by the uncontradicted testimony of Ensworth and G. W. Rose ; and they also show that they prayed for sale of the lands in dispute. They clearly identify the lands in dispute as those described in said petitions. (See Tutt vs. Boyer, 51 Mo. 425.)

IV. The finding of the probate court, when making its order November 7th, 1864, for sale of realty, that the personalty was insufficient to pay the debts of the deceased, is not reviewable in this proceeding. The heirs should have appealed from the order of sale, and cannot now attack it in this collateral proceeding. (Wolf vs. Robinson, 20 Mo. 459.)

V. The order of sale is based upon the petitions of both the creditors and administrator, and, taken in connection therewith, sufficiently describe the land. (Adams vs. Larrimore, 51 Mo. 130.)

VI. The reception of the report of sale and order that it be spread of record, taken in connection with the subsequent approval of the administrator's final settlement (and discharge of him), which settlement accounted for receipt and disbursement of the proceeds of said sale, constituted sufficient approval of said sale. (Jones vs. Manly, 58 Mo. 509 ; Worthington vs. McRoberts, 9 Ala. 247 ; 7 U. S. Dig. 264, § 96; Patter vs. Thomas, 58 Mo. 163.)

VII. There was no error in admitting deed by Wm. Banter, administrator. Although defective in not reciting an approval, yet the approval having in fact been made by the court, the deed passed the title and cannot be attacked here as a void deed. (Bobb vs. Barnum, 59 Mo. 394.)

VIII. There was no error in admitting in evidence the deed of Brown, administrator *de bonis non*. His appointment as administrator *de bonis non*, and his acts as such, cannot be contested or questioned in this collateral way. (Wagn. Stat. 98, § 36 ; Riley's Adm'r vs. McCord's Adm'r, 24 Mo. 265 ; Gridleys vs. Phillips, 5 Kas. 349.)

IX. If there were fraud on the part of Moore, no acknowledgment is shown to have been possessed by defendants, Weddle and Ranson, and if the land were still in the possession of Moore or his heirs, plaintiffs could not attack the transaction without tendering Moore the consideration paid by him with interest. (Bump. Fraud. Conv. p. 574 ; Drury vs. Cross, 7 Wal. 299.)

X. We assume that there was a revocation of the letters of Prudence Morgan, or disqualification to act, either by death or marriage.   If she were alive, why was she not made a party in this suit.   It is believed that the court will not assume or surmise facts of which the court below was not required to take notice.

The probate court, as the evidence shows, constantly and for years dealt with Banter as sole administrator, and, we may justly believe, he was such.

NAPTON, Judge, delivered the opinion of the court.

This was an action of ejectment for the east half of the southeast quarter of section 27, and the northeast quarter and the east half of the southeast quarter, and the northeast quarter of the northwest quarter of section No. 34, township 58, range 32, altogether 360 acres.

The plaintiffs were heirs at law of James Morgan.

The defendants set up a special defense based upon a sale of this land of James Morgan by his administrator, at which they were purchasers.

It is unnecessary to recite the details of the answer, as the questions presented arise on the proofs offered at the trial.

The records of the probate court, offered in evidence by the defendants, show that on February 17th, 1863, letters of administration on the estate of James Morgan, deceased, were issued to Wm. Banter and Prudence Morgan.   Various accounts were presented against this estate in 1863, and allowed.

On June 7th, 1864, a petition is filed by H. M. Vories and others, praying the court to order the sale of certain real estate, and W. Banter, administrator, by his attorney, joins in this petition, and thereupon the court orders that said Banter give notice

according to law that at the next term an order will be made to sell a sufficient amount of real estate to satisfy the said claims of Vories and others, and all other claims against said estate.

On August 1st, 1864, the court orders that a notice be given that the court will, at the November term, 1864, order a sale.

On November 7th, 1864, it appears that Banter, administrator, satisfies the court that the order above has been published, and moves for an order of sale, and the court, being satisfied that there are not sufficient personal assets to pay the debts of said estate, it is ordered that the administrator, Banter, sell at public auction or at private sale, upon one-third cash, the balance in equal payments of six and nine months from the day of sale, the deed to be made on complete payments. Notice in a newspaper was dispensed with, but the administrator, Banter, was ordered to report to next term.

On March 7th, 1865, the entry is that. Silas Woodson, by his agent, Henry M. Vories, presents an account for $1,392.16 and interest, and the account is allowed.

On May 1st, 1865, the record is that the administrator, Banter, reported to the court; that in obedience to the order of the February term, 1865, directing a sale of the real estate, he had sold at private sale, on the terms specified in the order, to Wm. Moore on the 15th of April, 1865, first having the land appraised by Wm. Stanford, Jas. McCroskey and Abner Lee, three disinterested householders of said county, they having first been sworn as appraisers, and by the affidavit of said appraisers and the certificate (filed herewith), and that Moore had fully complied with the terms of sale, and paid $1,200 in cash and gave his two notes payable in six and twelve months. The appraisement reported estimates the land at $10 per acre, i. e., $3,600 for the entire tract. Said report is received by the court and ordered to be spread on the records.

On May 18th, 1868, a final settlement was made, the record reciting due proof of notice, etc. The record then shows that on July 14th, 1873, letters of administration de bonis non were issued to Stephen S. Brown upon the estate of James Morgan,

deceased, who files his bond in the sum of $100, which is approved.

On the same day Daniel Ranson filed his petition asking the court to order the administrator *de bonis non* to convey certain real estate described in the petition; which said estate was sold by Wm. Banter, former administrator, and no proper conveyance of the same was made by him.

On the same day is the following entry: "Now this cause coming on for hearing, and it appearing to the court that at the November term, 1864, of the DeKalb county court, then having probate jurisdiction, and on the 7th of November, the said court ordered Wm. Banter, administrator of the estate of Jas. Morgan, deceased, to sell the following described real estate belonging to the estate of said James Morgan, to-wit: the east half of the southeast quarter of section 34, township 58, range 32, and that in pursuance of said order the said administrator did sell, on the 15th of April, 1865, the said lands at public sale to one Wm. Moore for the sum and price of $10 per acre, after having had the same duly appraised according to law, and that the said purchase money has been fully paid to the said Wm. Banter as such administrator; and it further appearing that at the May term, 1865, of said court, the said administrator made a full report of said sale to said court, which said report was then and there approved by said court by its order of record, and that afterwards, to-wit: on the —— day of —— said Wm. Moore died at said county of DeKalb, leaving as only heirs, Ann E. Moore, widow, (since intermarried with T. A. Throckmorton) James W. Moore, and Media Moore, and Wm. Moore, and that the said Wm. Banter, on the 18th of May, 1868, made final settlement of his accounts as administrator of said estate of Wm. Morgan, deceased, and was discharged from said administration, and that afterwards letters of administration *de bonis non* of said estate were granted to Stephen S. Brown, the above named defendant, and that no deed to the above described land was ever made by the said Wm. Banter, administrator, to the said Moore, or his legal representatives; and it further appearing to the court that Daniel Ranson, the petitioner herein, is the assignee and owner of all the

right, title and interest which the said Moore or his heirs had in said lands by virtue of said sale ; it is therefore ordered by the court that Stephen S. Brown, administrator *de bonis non* as aforesaid, execute, acknowledge and deliver to the said Ann E. Throckmorton, (formerly Ann E. Moore) Jas. W. Moore, Media Moore and Wm. Moore, heirs at law of the said purchaser, Wm. Moore, all the right, title and interest, which the said Jas. Morgan had at the time of his decease in and to said real estate, to-wit ; the east half of the southeast quarter of section 34, township 58, range 32, in said DeKalb county."

The defendants then proved by the probate judge that the petition for the sale of said real estate was lost or mislaid, and could not be found after a diligent search, and then introduced a witness to prove its contents. Objections were made on the ground that the records of said court did not show that the parties presenting such petition were at the time creditors of the estate, and because the loss of said petition could not be supplied by parol evidence, the statute having provided a means by which said petition could be proved. These objections were overruled, and Mr. Ensworth being introduced as a witness, stated that he presented a petition to the probate court of DeKalb county ; that there was a mortgage on the records of DeKalb county given to the witness to secure a debt due to Silas Woodson, Henry M. and A. H. Vories and himself. The witness drew up the petition, which was for a sale of the lands described in said mortgage to satisfy this indebtedness. The mortgage was then produced, bearing date 24th of September, 1859, and purported to convey the following lands : " the tract of land bought of Wm. Davenport, containing one hundred and twenty acres ; also the tracts of land purchased of the Young heirs or relatives, containing one hundred and forty acres ; also, a tract purchased of one Graham Hughes or Wm. Hughes, of St. Louis, containing forty acres, all adjoining and lying about a north or northeast course of Stewartsville, and three miles therefrom, and adjoining lands of one Duncan, called Cap M. Duncan, and John Clark and others."

This deed recites that Ensworth and Woodson had entered into a recognizance for the appearance of said James Morgan in the

Buchanan circuit court to answer a criminal charge specified in the sum of $5,000, and that said Morgan had also executed to said Woodson and Ensworth and H. M. and A. H. Vories his notes for $1,000, and if the said Woodson and Ensworth were not saved harmless, and the said notes were not paid, then the said Ensworth, or his legal representatives, or in case of his death or absence, the sheriff should proceed to sell the property described, at public auction, at the court house door, for cash, giving twenty days' notice by advertisement in a newspaper, and said Ensworth should make a deed, etc.

This witness further stated that in his petition he described the land as it was described in the deed of trust, and then added the description of the lands in the deeds to Morgan from Wm. Davenport and from the Young heirs and S. Hughes or some other Hughes in St. Louis. In the opinion of the witness the petition contained all the necessary allegations.

The defendant then offered to prove, by one Rose, the contents of a petition filed in the probate court by the administrator of said Morgan for the sale of real estate. This was objected to, as the record contained no statement of any such petition. The objection was overruled, and Mr. Rose testified that Wm. Moore and himself were the attorneys for the estate of Jas. Morgan ; that Moore drew up a petition for the sale of this land in the name of the administrator, which was accompanied with an inventory and accounts of the administrator. This witness thinks Moore drew up the petition with great care, as he intended to buy and did buy the property.

The defendant then gave in evidence a report of the sale and a certificate of the appraisement on file in the office of the probate court. This report was, in substance, that the administrator, Banter, in obedience to the order of court of February term, 1865, directing the sale of the real estate as follows : the east half of southeast quarter and east half of northeast quarter section 34, and west half of the northeast quarter section 34, and east half of southeast quarter section 27, and the northeast quarter of northwest quarter section 34, all in township 58, range 32, did sell, on the 13th of April, 1865, to William Moore, first having

the same appraised. The appraisement, fixing the value at $10 per acre, is appended, or $3,600 for the entire tract.

The defendant then read a deed from Banter, administrator, to the heirs of Moore, executed in 1868. This deed describes part of the land as the east half of the south quarter of a section ———, and is objected to as not stating any approval by the probate court of the report of the sale.

It was then proved that by a decree of the circuit court of De-Kalb all the title which the heirs of Wm. Moore acquired from Banter had been vested in defendant Weddle, and that by a judicial sale all the title of the defendant Weddle in the northeast quarter of southeast quarter of section 27, and northeast quarter and east half of the southeast quarter section 34, township 58, range 32, had been vested in defendant Ranson.

The deed of Brown conveys the interest of Morgan in the east half of the southeast quarter of section No. 34, township 58, range 32, to the heirs of Moore. This deed seems only designed to correct a mistake in the deed of Banter, wherein the east half of the south quarter is stated, instead of the east half of the southeast quarter of a section. This deed was objected to, and the objections overruled.

The case having been submitted to the court, the finding and judgment were for the defendants, and from this judgment an appeal was taken to this court.

It is difficult to determine from the confused and imperfect and somewhat contradictory statements of the record, a sketch of which we have attempted to give, the precise order of the proceedings in the probate court, and the correct dates at which they occurred. This difficulty is increased by the loss of important papers, to supply which parol testimony has been resorted to.

The only question, however, in this case, in which the controversy is between the heirs of the decedent and purchasers from the purchasers at the administrator's sale, is, whether the probate court had jurisdiction to order the sale in question, and whether the sale made in pursuance of such order was duly reported to the court and approved by it.

We dismiss at the beginning any consideration of the objection that Mrs. Morgan, who was appointed administratrix in common with Banter, the administrator, never seems, so far as the record shows, to have taken any part in any of the proceedings in the probate court. The record is silent as to the reason. It may be that she never qualified, or became disqualified before any steps were taken in the administration. We must presume that some sufficient cause occasioned the entire absence of her name from the record after her appointment.

We gather from the record that in June, 1864, upwards of a year after the appointment of administrators, two petitions were presented to the court, asking a sale of the lands in controversy —one by Vories and others, and the other by the administrator— though it is stated in portions of the record that Vories and the administrator joined in the one petition. The testimony of Ensworth and Rose is conclusive, if it were of any importance, that separate petitions were filed. The petition of Vories was based on a claim against the deceased, held by Vories and Ensworth and Woodson, and which was secured by a mortgage. The county court of DeKalb county had no jurisdiction to foreclose mortgages, except such special powers as are entrusted to them by the 6th section of art. 3 of the administration law ; though it does not follow from this special provision, that a mortgagee might not present his claim, waiving his mortgage, and ask a sale of lands. If the lands are those included in the mortgage, only the equity of redemption of the decedent could be sold. The claim on the note or debt secured by the mortgage is, in such case, the basis of the order asked for, and if the land included in the mortgage is sold under the order, it is sold subject to the mortgage. But in such case the heirs of the mortgagor could not maintain ejectment, as the legal title had passed from their ancestors ; and if the mortgage debt is extinguished by the sale, then they would have neither a legal or equitable title.

In this case, however, the administrator joins in the petition for a sale, or presents a separate one, and this he is authorized to do, if the personal estate is insufficient to pay the debts. This petition of the administrator must be accompanied with a true

account of his administration and a list of debts due to and by the deceased, and remaining unpaid, and an inventory of the real estate and of the remaining personal estate, with its appraised value, and all other assets in his hands. The petition of Banter, the administrator, is lost, as was proved in the trial of this case, and its contents were proved by parol. We do not understand that sections 14 and 15 of the acts of 1870 (Wagn. Stat. 1137) were intended to supersede such evidence of lost documents in county or probate courts as was admissible at common law, and therefore, upon proof that these papers were lost, it was competent to establish their contents by parol on the trial. Mr. Rose, who was the lawyer who drew up the petition for the administrator, states that it was accompanied with a list of debts and an inventory of the effects. Mr. Ensworth, also a lawyer, gives it as his opinion, that the petition he presented conformed to all the requisites of the law. This opinion was not evidence; it was the duty of the witness to state facts, and it was for the court to determine whether the contents of his petition were such as the law required, or not. But the question is immaterial here, since a creditor need only notify the administrator when he desires a sale of real estate, and then it is the business of the administrator to exhibit to the court the true condition of the estate, as to personal and real property and debts. As the administrator was present when Mr. Ensworth presented his petition, and joined in the petition or presented a separate one, this notice may be regarded as waived; and as the proof in regard to the petition of the administrator was unobjectionable, it may be considered that both petitions were sufficient in form.

I have not noted a list of the debts allowed against the estate, nor of the personal property sold, though both are in the record, because it subsequently appears from the record that the court found the personal property insufficient to pay the debts, and that finding is conclusive between the present parties. As was observed by this court in Wolf vs. Robinson (20 Mo. 459) the heirs should have appealed from the order, if the recited facts upon which it was based were untrue. The notice of the application in this case, it is conceded, was sufficient.

The identity of the lands described in the petitions with the lands ultimately sold and now in controversy, is clearly established. This was done by Mr. Ensworth, not merely by copying in the petition the description of the land in the mortgage, but by going to the records and examining the deeds to Morgan and placing in the petition the numbers of the sections and subdivisions stated in these deeds. Whether, then, the description in the mortgage was imperfect and insufficient, or not, the subsequent description, in the petition, of the different lots by their appropriate numbers in the United States surveys, renders unnecessary any inquiry into the sufficiency of the description of lands in the mortgage. ·

There are also some irregularities in the order of allowances as found in the record, from which it appears that the allowance of the mortgage note was made subsequently to the order of sale in November, 1864, though before the sale in April, 1865. It is evident that this note was one of the claims to which the attention of the court was called in the applications for a sale both by the administrator and by Ensworth or Vories or Woodson, since it is clear that these last named creditors had no other claim against the estate except what was secured by the mortgage, and their petition was based upon it. Whilst we incline to think that the direction in the 22nd section of the 3rd article of the act was intended to apply to allow demands, yet we find that in Mount vs. Valle, (19 Mo. 621,) and Overton vs. Johnson, (17 Mo. 446,) the petition in each case referred to debts not allowed, and the sales made under orders based on such petitions were upheld. In the present case it is obvious that the omission to have the mortgage debt allowed before the order of sale was a mere inadvertence which could have resulted in no injury to any one, as it was subsequently allowed, and in any event it was not such an irregularity as would affect the title of the purchaser at the sale.

The county court, then, having acquired jurisdiction of the subject matter by the presentation of the petitions referred to, whether accompanied by the exhibits and accounts required or not (Overton vs. Johnson, 17 Mo. 466), it remains to inquire if the sale made under the orders of November, 1864, was ap-

proved by the court. The entry in the record is that the report was received and ordered to be spread on the record.

The statute declares (sec. 34) that "if such report and proceeding of the executor or administrator be not approved by the court, his proceedings shall be void, and the court may order a new sale, upon which the same proceedings shall be had as upon the original order."

Section thirty-five declares that "if such report be approved by the court, such sale shall be valid, and the executor or administrator, or, if he be the purchaser, the clerk of the court shall execute, acknowledge and deliver to the purchaser a deed, referring in apt and appropriate terms to the order of sale and the court by which it was made, the certificate of appraisement, the advertisement, the time and place of sale, the report of the proceedings, and order of approval thereof by the court, and the consideration, and conveying to the purchaser all the right, title and interest which the deceased had in the same."

It will be perceived from the above sections that no particular form is prescribed by law by which the approval of a reported sale by the court is to be indicated, nor is it required that a formal approval be entered in the record. It is simply provided that if the court does not approve the report the proceedings shall be void and a new sale ordered, if the court thinks it proper; but if the report be approved the sale shall be valid, and the executor or administrator shall make a deed to the purchaser.

If the record shows an approval of the sale, although no formal entry of an approval is found, it will be sufficient. (Jones vs. Manly, 58 Mo. 559.)

It is impossible to resist the inference that the court in this case approved of the sale. Repeated annual settlements were had with the administrator, and a final settlement ultimately, in which the proceeds of this sale were accounted for and a deed made to the heirs of the purchaser by the administrator. All these were submitted to the court and approved, and it would be absurd to suppose that the court would allow the administrator to receive the purchase money and charge him with it in his settlement if they had not previously sanctioned the sale. Besides, if

the report of the sale was not approved, some action of the court must have followed providing for a re-sale, but no such action occurred; but all the subsequent proceedings of the court were based on the assumption that they had already approved the sale as reported.

The final objection to this sale and title acquired under it, and the only one based on meritorious considerations, is, that Moore, the attorney of the administrator, and who drew up the petition for the sale, was the purchaser, and very soon afterwards sold to defendant (Weddle) for $6,000, thus realizing a profit of $2,400. Regarding the administrator as a trustee for the heirs and his attorney as therefore bound to guard their interests, still a purchase by an attorney is not *per se* void, and the facts, if any, which might induce a court of equity to declare it void could not be investigated in an action of ejectment. But under our statute. the administrator himself may buy at a private sale, provided he gives three-fourths the amount of the appraised value, and certainly his attorney would not occupy a worse position than he himself would. In this case the attorney gave the full amount of the appraised value for the land, and, so far as the records show, his purchase was fair and not tainted by any actual fraud. At all events the present defendants are *bona fide* purchasers for value, without any knowledge of any previous frauds in Moore.

The deed made by the administrator *de bonis non* in 1873 was merely to correct a mistake in the deed of Banter in 1868, in which the east half of the southeast quarter of a section was termed "the east half of the south quarter." The administrator (Banter) had made a final settlement and been discharged. He therefore could no longer act, and the probate court, which succeeded the county court of DeKalb county in the jurisdiction over the administration of estate, treated the mistake as a failure to convey, and therefore appointed administrator *de bonis non* for the sole purpose of making the conveyance. This case is not within the letter of section thirty-six of the 3rd article of the administration act, which provides for cases only while the administrator removes out of the State, or resigns, or dies, or his letters are revoked. The statute is silent in regard to a case of

final settlement and discharge. No authority is given to the court to appoint an administrator *de bonis non* merely to correct a mistake in a deed of the original administrator. It may have been through oversight that such provision was omitted. As this mistake, however, is not one of those omissions of duty required by the statute of administrators, to supply which the remedial powers of courts of equity do not extend, (Hough vs. Bates County, 61 Mo. 392) the defendants may amend their answer so as to authorize the court to have the mistake corrected. But because of the admission of the deed of Brown, administrator *de bonis non*, the judgment must be reversed, and the defendants have leave to amend this part of their answer.

Judgment reversed and case remanded. The other judges concur, except Judge Wagner, who is absent.