LONG, *Appellant*, v. THE JOPLIN MINING & SMELTING COMPANY.

1. **Deed,** OF AN ADMINISTRATOR DE BONIS NON. The deed of an administrator *de bonis non*, appointed for the sole purpose of making a deed which his predecessor neglected to make, is a mere nullity, (following *Grayson v. Weddle*, 63 Mo. 523).

2. ———: EQUITABLE TITLE OF PURCHASER WITHOUT DEED. A purchaser

at an administration sale, duly approved by the probate court, who has paid the purchase money, acquires an equitable interest in the land, which will constitute a sufficient equitable defense to an action of ejectment brought by the grantee of the heirs of the deceased, with actual or constructive notice of the facts.

3. ———, EXISTENCE OF, WHEN PROVEN—DELIVENY OF, WHEN PRESUMED. An order of approval of the report of a sale of real estate, of date November 29th, 1854, showed that, at the time of filing his report, the administrator also filed "a sale bill of said real estate;" the record showed that the purchase money was paid, and it was proven that the administrator and the purchaser had died in 1861; that since their deaths the property had been sold under two deeds of trust executed by the purchaser, of date, respectively, in 1855 and 1858; that those whose titles were divested by the administration sale, made no claim to the property for years after it had been sold under one of said deeds of trust, and not until it had become exceedingly valuable, and the busy seat of population and of mining industry; *Held*, that, as no sale bill of real estate is ever executed by an administrator, the words " sale bill of said real estate " would be construed to refer to, and establish the existence of, a deed for such real estate; and that its delivery and acceptance would be presumed on the following grounds: First, Its delivery would have been the usual concomitant, in the ordinary course of business, of the payment of the purchase money; Second, It would have been the obvious duty of the administrator to have delivered the deed upon the receipt of the purchase money; and, Third, As the deed was a plain conveyance without conditions, its acceptance would have been beneficial; especially as the other facts and circumstances were consistent with the existence of the deed, and tended to strengthen the presumption of its delivery and acceptance.

4. **Administration Sale,** TITLE UNDER; EFFECT OF FINAL SETTLEMENT. The title to real estate, once vested in a purchaser at an administration sale, will not be divested by a statement of the administrator, in his final settlement, of his acceptance of one-half of the purchase money, only, on the ground that the purchaser was already the owner of one-half of said real estate. The amount of the purchase money was a question in which only those who were interested in the proceeds of the sale were concerned, and as to that they would be concluded by the final settlement if no appeal was taken therefrom.

*Appeal from Jasper Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

The deed from M. M. James, referred to in the opin-

ion, was dated February 28th, 1874, and was executed in pursuance of an order of court upon him, as acting administrator of Alexander Orchard, to make a deed to the defendant, as assignee of William T. Orchard, under his purchase at the administration sale made by Clisby Robinson, the former administrator, who died in 1861. His successor, M. M. James, was appointed October 3rd, 1873. The final settlement of Clisby Robinson of August 25th, 1858, besides giving a description of the land in dispute, and the name of the purchaser, further stated that the sale of the land was made for $40, through mistake; that the administrator should have been charged with $20 only, as one-half of the so-called forty acres of land belonged to William T. Orchard, who became the purchaser, and had paid $20 only for the one-half. The other facts sufficiently appear in the opinion of the court.

*Carter & Clardy* with *E. T. Farish* for appellant.

The proceedings in the probate court were irregular and defective, and the attempted sale by the administrator conveyed no title. These proceedings were defective in the following particulars:

(*a*) The only evidence that a report of sale was ever made by the administrator, is the record of the county court approving such report, and in this record the real estate attempted to be sold is not described.

(*b*) The statute requires a deed to be made to the purchaser, and declares that such deed shall convey to him all the right, title and interest which the deceased had to such real estate, at the time of his death. *Wohlien v. Speck*, 18 Mo. 561; *Speck v. Riggin*, 40 Mo. 405. No deed having been made, and no effort to make one having been shown, the heirs of Alexander Orchard were not divested of their title. Rorer on Judicial Sales, (1 Ed.) chap. 4, § 134, p. 59.

(*c*) The subsequent appointment of M. M. James as

administrator, was illegal and void, final settlement of the estate having been made some fifteen years before he was appointed, and there being no assets to be administered or debts to be paid. No authority is conferred on the probate court to appoint an administrator *de bonis non* for the sole purpose of making a deed. *Grayson v. Weddle*, 63 Mo. 523; *Gasque v. Moody* 12 Sme. & Mar. 153; *Manly v. Kidd*, 33 Miss. 141. The deeds to Orchard and to the defendant were, therefore, void.

In the final settlement of Clisby Robinson, as administrator, he recites that he sold but one-half of said land to Wm. T. Orchard, said Orchard being the owner of the other half. Now, if the statement is effectual for any purpose, it is to show that defendant has no title whatever to one-half of the land sued for. The defendant having offered this final settlement or amended report of sale in evidence, is estopped from denying its recitals. *Speck v. Riggin;* 40 Mo. 405.

The decree of the court divesting plaintiff of title was irregular, illegal and unwarranted. A court of equity never aids the imperfect execution a statutory power. *Moreau v. Detchmendy*, 18 Mo. 522; *Speck v. Wohlien*, 22 Mo. 310; *Hubbell v. Vaughan*, 42 Mo. 138; *Moreau v. Branham*, 27 Mo. 351; *Briyht v. Boyd*, 1 Story 478; 1 Story's Eq., (10 Ed.) chap. 4, § 96, p. 95, and chap. 5, § 177, p. 176; Bispham Prin. of Eq., cap. 1, part 2, § 182, p. 188, and § 193, p. 195; Kerr on Fraud and Mistake, 444. The doctrine laid down in the case of *Houp v. County of Bates*, 61 Mo. 391, does not militate against this position.

*G. H. Walser, L. P. Cunningham* and *Nathan Bray* for respondent.

1. We think that the defendant has the legal title to the land; it is conceded that Alexander Orchard died owning the land. It is shown in evidence that on the 29th day of August, 1854, the land was sold at public sale for

the payment of the debts of said Orchard's estate; that the sale was duly reported and confirmed on the 28th day of November, 1854, and the purchaser, William T. Orchard, paid the purchase money; that he (William T. Orchard) gave the two deeds of trust introduced in evidence, made in 1855 and 1858, both of which were regularly foreclosed, and that Logan O. Swope bought under the deed of trust given in 1855, and Nathan Bray under the other, and that both said Swope and Bray conveyed to the defendant; and that defendant thus being vested with the right of William T. Orchard acquired by him under the administrator's sale, obtained an administrator's deed to be made to itself as the assignee of said William T. Orchard.

2. The probate court had jurisdiction to order M. M. James, then acting administrator of the estate of Alexander Orchard, to make to the defendant an administrator's deed, the former administrator, Clisby Robinson, having failed to make any deed. The estate was still open; although Clisby Robinson had presented what seemed to be a final settlement, he was not discharged, and the estate was still within the control of the probate court. *Bartlett v. Glasscock*, 4 Mo. 62; Rorer on Judicial Sales, pp. 144, 145, § 364; *Rugle v. Webster*, 55 Mo. 246; *Shore's Admr. v. Coons*, 24 Mo. 553; 1 Wag. Stat., §§ 36, 37, p. 98.

3. By reason of the administrator's sale to William T. Orchard, the payment of the purchase money, the approval of the sale, and the sale under the two deeds of trust given by William T. Orchard, and the conveyances to the defendant by the purchasers thereunder, defendant became possessed of an equity in and to the land, which coupled with its possession and the improvements made on the land, will surely defeat the plaintiff in this action. The equitable title to the land was vested in William T. Orchard by the administrator's sale and that equity was assignable. *Bartlett v. Glasscock*, 4 Mo. 62; Rorer on Judicial Sales, §

370; *McLean v. Martin*, 45 Mo. 393; *Jones v. Manly,* 58 Mo. 559; *Shroyer v. Nickell*, 55 Mo. 264.

*C. W. Thrasher* and *H. C. Young* for respondent.

The equitable title to the lands in controversy, acquired by respondent from Wm. T. Orchard, independent of the deeds made by M. M. James, as administrator of Alexander Orchard, deceased, was a sufficient equitable title in respondent to defeat a recovery by appellant in ejectment. Tyler on Ejectment, 565, 731, 738, 765; *Bartlett v. Glasscock*, 4 Mo. 62; *Castleman v. Relfe*, 50 Mo 583; *Voorhees v. Bank U. S.*, 10 Pet. 478, 479, 449; *Hayden v. Stewart*, 27 Mo. 286; *Tibeau v. Tibeau*, 19 Mo. 78; *Carman v. Johnson*, 20 Mo. 108; *Harris v. Vinyard*, 42 Mo. 568; *Willis v. Wazencraft*, 22 Cal. 607; *Henderson v. Dickey*, 50 Mo. 161; *Petty v. Malier*, 15 B. Mon. 591; *Ells v. Pacific R. R. Co.*, 51 Mo. 200; *Harrington v. Fortner*, 58 Mo. 468; *Collins v. Rogers*, 63 Mo. 515; *Barker v. Circle*, 60 Mo. 258.

SHERWOOD, C. J.—The defendant was successful in the ejectment brought by plaintiff, hence this appeal.

I. An administrator *de bonis non* cannot be appointed for the *sole* purpose of making a deed which his predeces-

1. DEED, of an administrator de bonis non.

sor had neglected to make; for this reason, the deed made by M. M. James to defendant was a mere nullity. *Grayson v. Weddle*, 63 Mo. 523.

II. But, though the deed of James was inoperative, did not accomplish the purpose which induced his appoint-

2. ——: equitable title of purchaser without deed.

ment, yet it is by no means clear that plaintiff should have recovered the land sued for. The records of the county court show that, at the November term, 1854, an order was made as follows: "This day comes Clisby Robinson, public administrator of Jasper county, and *ex officio* administrator of the estate of Alexander Orchard, deceased, and files his report of the sale of real estate belonging to said estate, and also a sale bill of said real estate, which is approved by the court." A subse-

quent entry, made February, 1855, showed permission granted by the county court, to the public administrator, to amend his report, and a further entry, made August 25th, 1858, shows the final settlement of the administrator, which contains a description of the land in controversy.— forty acres—and the person to whom it had been sold. William T. Orchard, under whom defendant claims by means of deeds of trust, executed by Wm. T. Orchard, in the year 1855, to Jno. R. Chenault and to Wm. M. Chenault, in August, 1858, and sales under such deeds in 1867 and 1874, at which sales those under whom defendant claims, purchased the property in suit.   Alexander Orchard, mentioned in the county court proceedings, died in 1853, and he was the patentee of the land, the patent therefor having issued in 1852.   Plaintiff claims under a quitclaim deed from his heirs, executed in 1872.   The land in controversy has had no occupant or improvement from 1853 up to 1870, in which former year a small hut erected by Alexander Orchard, assisted, perhaps, by Jeremiah and Wm. T. Orchard, was destroyed or removed.   In 1870, however, lead, in large quantities, having been discovered on the tract in question, it has become very valuable, and together with adjacent tracts, has become the seat of a populous town called " Joplin City," an addition to that town covering a portion of the land sued for, having been laid out in 1872, anterior to plaintiff's purchase from the heirs. We entertain no doubt that Wm. T. Orchard, by his purchase at the administration sale, acquired at least an equitable or beneficial interest in the premises sold; and although those premises are not properly designated in the order approving the report of sale, yet the final settlement shows the description of the land and to whom sold; and this is amply sufficient.   That William T. Orchard acquired, by his purchase of and payment for the land, an equitable interest therein, is shown by our own adjudicated cases. *Bartlett v. Glasscock*, 4 Mo. 62; *Castleman v. Relfe*, 50 Mo. 583; *Grayson v. Weddle*, 63 Mo. 523.   We do not under-

stand the case of *Wohlien v. Speck*, 18 Mo. 561, as going to the extreme of asserting that no equitable title passed to the purchaser at an administration sale, and after the regular approval thereof. The question in that case was upon the sufficiency of the legal title of plaintiff, to maintain ejectment, where the approval occurred at the same term as the sale, then regarded as a fatal defect; and where no deed had been delivered. The non-approval of the sale at the proper term was held as one of the chief impediments to success in a proceeding in equity, by the same plaintiffs, and the intimation clearly given that if the approval had occurred at the proper term a different result might have followed. However that may be, the doctrine was well settled in this State at that time, that a purchaser at an administration sale did acquire, upon the approval of the sale and the payment of the purchase money, an equitable title to the premises sold, though no deed had been made. *Bartlett v. Glasscock, supra*. The authority of that case was not called in question in the Speck-Wohlien case, and the doctrine that the purchaser at an administration sale, who, in conformity to the order of approval, has paid the purchase money, has an equity which is a sufficient basis whereon to base equitable interposition, has since found frequent recognition in this court. *Grayson v. Weddle, Castleman v. Relfe, supra*; *State v. Towl*, 48 Mo. 148. And most assuredly it would be a grave and great reproach on the administration of public justice, if a purchaser at a probate sale regular in every particular, who has done all that was necessary on his part, and having, in consequence of the death of the administrator, who had fully administered, neither ground for nor adequate relief at law, should appeal in vain to a court of equity for that relief, which was denied him in every other quarter. And if it be admitted that an equity is acquired by the purchaser at administration sale, although no deed be made, this admission paves the immediate way for the further admission that a court of chancery will, under appropriate circum-

stances, call into active exercise its numerous and flexible powers, in affording that measure of relief, incapable of being afforded, or furnished, by other jurisdictions. In other words, whenever you establish an equity, you thereby, and *ipso facto*, establish the consequent right to have that equity given recognition and protection. We have no hesitancy, therefore, in holding that defendant was justified in invoking equitable relief in support of the case, made by its answer, and this more especially as plaintiff is confessedly a purchaser, with such notice, at least as was sufficient to put him on inquiry, and which, if pushed with reasonable diligence, would inevitably have led to the discovery of defendant's equitable title.

III. But there is no slight reason for believing that defendant is the holder of the legal, as well as the equitable, title to the premises in controversy.

3. ———: existence of, when proven—delivery of, when presumed. The order approving the report of the sale of the real estate, shows that the public administrator filed, at the same time, " a sale bill of said real estate." As no " sale bill " of real estate is ever executed by an administrator, we are of the opinion that those words can reasonably refer to nothing else but the deed for such real estate, and that the clerk of the county court, through ignorance or inadvertence, used inappropriate words. If it be granted that the inference here drawn, as to the proper meaning of the words referred to, is not an unreasonable one; that a deed, in due form, was executed by the public administrator; the delivery of such deed may well be presumed; and this on several grounds :

1st. It is but in accord with the usual course of business, for the administrator to deliver the deed on receipt of the purchase money ; that the purchase money was paid, is shown by the record. The principle is a familiar one, that if you prove the existence of one fact, that another, its usual concomitant in the ordinary course of business, will be presumed. 1 Glf. Ev., § 40, and cases cited. Mr. Justice Story, in this connection, remarks ; " By the general

rules of evidence, presumptions are continually made in cases of private persons, of acts, even of the most solemn nature, when those acts are the natural result, or necessary accompaniment, of other circumstances. In aid of this salutary principle, the law itself, for the purpose of strengthening the infirmity of evidence, and upholding transactions intimately connected with the public peace, and the security of private property, indulges its own presumptions." *Bank v. Dandrige*, 12 Wheat. 64.

2nd. The delivery of the deed may be presumed, because Clisby Robinson, being public administrator, it was his obvious duty, on receiving the purchase money for the land, to have, as a concurrent act, delivered to the purchaser, the necessary conveyance; the presumption at once arises that he did not omit the performance of such a plain official duty.

In *Hartnell v. Root*, 19 Johns. 345, Mr. Justice Woodworth said: "The general rule is that where a person is required to do a certain act, the omission of which would make him guilty of a culpable neglect of duty, it ought to be intended that he has duly performed it, unless the contrary be shown." In that case, an action of trespass, it was presumed that the officer against whom the suit was brought, had made the requisite levy during the life of the execution, and, consequently, that he was no trespasser, though he sold the property after the return day thereof. In *Jackson v. Shaffer*, 11 Johns. 517, it was contended that the sale was void, because no prior levy was shown, but the court said: " It nowhere appears there has not been a levy, and if it were necessary they would, under the circumstances of the case, presume it to have been made." So also in Lord Halifax's case, on information against him, for his refusal to deliver up the rolls of the auditor of the exchequer, the court put the plaintiff upon proving the negative, viz: That his Lordship did not deliver them; " for a person shall be presumed duly to execute his office 'till the contrary appear." Bull N. P., p. 298. And in an

action against a sheriff for a false return, the burden of proving the negative allegation of falsity devolves on the party asserting it. *Clark v. Lyman*, 10 Pick 47.

. 3rd. A person is presumed to accept a plain, absolute conveyance without conditions, the acceptance of which is beneficial to him. *Bank v. Bellis*, 10 Cush. 276; 3 Wash. Real Prop. 266; *Foley v. Howard*, 8 Clarke (Iowa) 56, and slight acts evidencing such acceptance will suffice. *Bank v. Dandrige, supra*. Now the acceptance of a deed presupposes its delivery, and the one may, therefore, be presumed as well as the other. And the acceptance of a deed from the public administrator is sufficiently shown in the present instance by the payment of the purchase money, and by the deeds of trust executed in 1855 and 1858 by Wm. T. Orchard, the purchaser; acts which cannot be reasonably accounted for, save upon the supposition of the acquisition of the title.

These and similar presumptions are indulged in, as Mr. Justice Story says in *Bank v. Dandrige, supra* " according to the maxim, *omnia præsumuntur, rite et solemniter esse acta donec probetur in contrarium*." There is a class of cases where juries are instructed, or advised, to presume conveyances between private individuals, in favor of the party proving a right to the beneficial enjoyment of the property whose possession is consistent with such presumption, 1 Glf. Ev., § 46, and cases cited. This case however, is not regarded as falling within that category; for here owing to the nature of the land, there has been no occupation or cultivation; and the conveyance is not between private individuals. But in the case at bar the existence of the conveyance, and the payment of the purchase price, having as we think, been established by the record, we are only called on to presume that the regular and natural order of business was observed, and that a public officer was not guilty of a culpable omission of duty; these are presumptions which in the light of the authorities cited may well be indulged in, especially as some twenty years

had elapsed between the approval of the sale and the hearing in this cause; especially, too, as the public administrator and the purchaser died in 1861, and since that time the property has been sold under two deeds of trust executed by the purchaser during the life of the administrator, the one deed being executed some three years before the final settlement, and the other the next day thereafter. And what adds additional strength to these presumptions, is that those whose title was divested by the administration sale; whose title plaintiff represents, made no claim to the property until years after it had been sold under one deed of trust, discovered to be exceeding valuable, and had become the busy seat of population and of mining industry.

IV. But it is urged that the final settlement, taken in its broadest extent, only shows that one-half of the land in suit was sold to Wm. T. Orchard. In reference to this, it may be observed that the administration sale, being duly approved, vested as above seen, the equitable and beneficial title in the purchaser, and if the presumptions respecting the deed of the public administrator and its delivery have been correctly indulged in, then all the right, title and interest which the deceased had in the property, both legal and equitable, passed to the purchaser. 1 R. S., p. 147, § 35. If the public administrator, after the sale and its approval, and the delivery of the deed, saw fit, on the representations of the purchaser, to remit one-half of the purchase price, that would not divest the title already vested; that was a question altogether between the public administrator and those who were interested in the proceeds of the sale. But further regarding that point: Under our more recent adjudications, the same liberality of intendment is allowed as to the proceedings of a county court respecting matters within its jurisdiction as to any other court. *Johnson v. Beazly*, 65 Mo. 250, and cases cited. It will be intended, therefore, that due notice of

4. ADMINISTRATION SALE, title under: effect of final settlement

28—68

the final settlement was given; this notice when given had the effect to bring before the court, at the term of the final settlement, " creditors and all others interested in the estate." 1 R. S. p. 162, §§ 16 and 17. As that final settlement passed unchallenged at the hands of those thus summoned to attend, as no appeal was taken therefrom, we must intend that the question whether the deceased was the owner of more than one-half of the real estate was then and there upon sufficient testimony incidentally passed upon and determined, determined in a manner not at variance with the balance sheet which the public administrator represented to the court for its approval.

Judgment affirmed. All concur except HOUGH, J., not sitting.

AFFIRMED.