THERESA CLARA CAPELLI, Executrix of and Legatee Under the Will of the Estate of THERESA C. E. DOLD, Deceased, v. WILLIE D. BENNETT and LULA BENNETT, Appellants.—No. 40309.—209 S. W. (2d) 109.

Division One, February 9, 1948.

Rehearing Denied, March 8, 1948.

*Walter N. Davis, Frank E. Morris* and *Robert L. Schneider* for appellants.

*N. Murry Edwards* and *Ninian M. Edwards, Jr.,* for respondent.

[109] CLARK, J.—Respondent, as executrix and legatee of Theresa Dold, deceased, brought suit before a justice of the peace to recover from defendants [appellants] rent and possession of certain described real estate in the City of St. Louis. On motion of appellants the justice of the peace certified the case to the circuit court on the ground that title to real estate is involved. Upon a trial the circuit court rendered a decree for the plaintiff and defendants appealed.

The undisputed facts alleged in the pleadings and shown by the evidence are, in substance, [110] as follows: The real estate in question was owned by Theresa Dold until her death on December 29, 1945. Some time before that she had been adjudged of unsound mind by the probate court and respondent had been appointed and qualified as her guardian. The real estate was rented to appellants on a month to month basis. In October, 1945, Reardon, as agent for respondent, entered into a written contract with appellants to sell them the real estate for $4,000.00, subject to adjustments for rents, taxes and insurance as of date of closing, and appellants paid Reardon $100.00 to bind the contract. On November 13, 1945, respondent, as guardian, obtained an order of the probate court to sell the real estate to appellants in accordance with the contract. On December 11, 1945, respondent filed a report of the sale and on December 26, 1945, the same was approved by the probate court; on December 29, 1945, Theresa Dold died leaving a will which was probated January 23, 1946. The will named respondent executrix and, as residuary legatee, devised to her the real estate now in question. The will was executed prior to the time testator was adjudged to be of unsound mind and its validity is not questioned. On January 5, 1946, appellants paid a month's rent in advance. They then knew that Theresa Dold was dead. On February 5, 1946, appellants paid another month's rent in advance and refused to pay rent thereafter. Respondent testified that when she was applying for letters testamentary she told appellants that the contract had expired and she was no longer guardian. She was not finally discharged as guardian by the probate court until May 14, 1946. Respondent never received the $100.00 paid to her agent, Reardon, as earnest money. In February, 1946, Reardon offered to return this money to appellants, but they refused to receive it.

Appellants' answer or counterclaim set up most of the facts above stated, alleged that they are the equitable owners of the real estate and prayed that title be decreed in them, upon their payment of the balance of the purchase price, which they tendered into court. Upon their tender being refused, appellants paid the sum of $3,900.00 into the registry of the circuit court.

Appellants contend that the sale by the guardian, followed by her report of sale and its approval by the probate court, vested them with the equitable title, although no deed was delivered and the en-

tire purchase money had not then been paid. They further contend that the death of the owner, after the sale had been approved, did not destroy their vested equitable title.

Respondent contends that the equitable title did not vest in appellants because no part of the purchase money actually went into the ward's estate prior to her death, and that the death of the ward terminated the authority of the guardian. Respondent further says that, by the payment of rent after the ward's death, appellants are estopped to deny respondent's title.

Questions similar to, but not exactly like, those raised here have been before this court many times. The opinion in Henry v. McKerlie, 78 Mo. 416, reviews many prior decisions and holds that a sale of real estate by a guardian of minors, followed by report and approval, vests the equitable title in the purchaser; also, that a judgment of approval of such a sale by a probate court is just as invincible to collateral attack as a judgment of a circuit court. At page 428 the opinion makes a statement which has, in substance, been repeated by this court many times since, to wit:

"When the sale by an administrator or curator under an order of the court has been regularly approved by the court, this fact of itself passes to the purchaser an equity for the legal title, which equity, notwithstanding an irregular deed or the want of any deed, the court will enforce in his favor by denying recovery in ejectment, by the heirs, or by vesting him with the perfect title; provided, always, that he has on his part complied with the terms of the sale. *Grayson v. Weddle,* 63 Mo. 523; *Long v. Joplin Mining & Smelting Co.,* 68 Mo. 422; *Gilbert v. Cooksey,* 69 Mo. 42."

That case has been cited and followed many times, but it differs from the instant case because there the purchase money had been fully paid and a guardian's deed executed and delivered. The objections there made were that the order approving the sale was premature and that the guardian's deed did not contain necessary recitals.

[111] In Sherwood v. Baker, 105 Mo. 472; 16 S. W. 938, an administrator sold land of his decedent under order of the probate court, collected the purchase money, reported the sale and had it approved, but never executed a deed. Fifteen years later the purchaser sued the widow and heirs of the deceased owner and procured a decree vesting the legal title in him. This court affirmed the decree. That case and the one next mentioned are authority for the proposition that the approval of a sale of real estate by the probate court vests equitable title in a purchaser who has complied with the terms of sale, and that neither the discharge of an administrator or guardian nor the failure to deliver a deed will prevent the purchaser from obtaining a decree for the legal title. But, in those cases the full purchase price had been paid into the estate.

Oldaker v. Spiking, (Mo.) 210 S. W. 59, was an ejectment suit. Defendant's answer alleged and the proof showed that in 1866 a curator was appointed for plaintiff who was then a minor. The guardian, in 1868, procured an order for the sale of his ward's real estate, sold same and received payment, reported the sale and had same approved by the probate court. The curator did not execute a deed until 1877, long after he had been discharged as guardian and plaintiff had arrived at full age. This court did not pass upon the validity of the delayed deed, but held that the approval of the sale by the probate court vested the purchaser with the equitable title. We affirmed the decree of the circuit court which vested legal title in defendant.

So far as we can ascertain, this court has never been called upon to decide the exact question now before us. Undoubtedly the above and later cases rightfully commit us to the doctrine that the approval by the court of a guardian's sale, where the purchase money has been paid, creates an enforceable equitable title even though the ward die before the execution of a deed by the guardian.

Bone v. Tyrrell, 113 Mo. 175, 20 S. W. 796, and Joseph v. Belcher, (Mo. App.) 74 S. W. (2d) 483, cited by respondent, are not in point. In neither case was there a court approval of the sale and the decisions are based on that fact and other facts differing from those in the instant case.

We now turn to the statutes regulating sales by guardians. [References will be to sections of Revised Statutes of Missouri, 1939, and corresponding sections of Mo. R. S. A.]

Sections 475 to 480, inclusive, provide for sale of real estate belonging to insane persons under order of the probate court. Section 478 says the court shall fix the "terms of sale." Section 479 provides for a report of sale and that the same proceedings shall be had as in sales of real estate by guardians of minors. Sales by guardians of minors are regulated by Sections 402 to 411, inclusive. Section 405 provides "Sales of real estate of minors shall be conducted in the same manner and the same proceedings shall be had . . . as in cases of sales of real estate of deceased persons . . ." Section 407 provides for report of sale by a guardian or curator of a minor, "and such sale, if approved by said court shall be valid to all intents and purposes: . . ." Section 408 says "The guardians and curators having received payment of the purchase money" shall execute and deliver deeds, etc. Section 164, relating to sales of real estate by administrators, says, "If such report be approved by the court, such sale shall be valid, . . ."

In the instant case the statutory procedure for the sale of the ward's real estate was complied with by the guardian's petition for the sale, the court's order for the sale, the appraisement and report of sale and approval by the court. The statutes, Sections 407 and 164, say that

when these proceedings, including the court's approval, are had the sale *shall be valid*. The statutes do not require the payment of the purchase price or the delivery of a deed to validate the sale. Of course, the *legal* title does not pass until the delivery of a deed, or until a decree of a court of competent jurisdiction is rendered.

In this case no contention is made that all the statutory proceedings were not followed up to the order approving the sale. No fraud or inadequacy of consideration [112] is claimed, but respondent contends that the order approving the sale is void because the entire purchase price had not been paid prior to the entry of the order of approval. We find no statute which supports that contention. The statutes seem to leave that matter to the sound discretion of the probate court. The court may require the payment of all or a part of the purchase money before approving the sale or, if it deems the purchaser financially responsible, the court is not compelled to require prior payment of any part of the purchase money. Section 408 recognizes that, even after the sale has become valid by the court's approval and the time has come to deliver the deed, the purchase money may still be unpaid and, therefore, commands the guardian to collect the money before delivering the deed. The approval of the sale binds both the purchaser and the ward's estate, but the purchaser will forfeit his rights if he refuses to pay the full purchase price at or prior to the transfer of the legal title.

Respondent says that "a guardian has no authority to bind either the person or the estate of the ward by contract." That is only partly true. The guardian can bind the ward's estate by contract made in pursuance to statute and under the orders and approval of the probate court.

Respondent also says that the guardianship terminated on the death of the ward and the sole function of the guardian thereafter was to settle the accounts and deliver the estate to the personal representatives of the ward. True, but would not the guardian still have power to pay claims which had been allowed and complete contracts which had matured before the ward's death? We need not answer the question, for whether or not that power survived to the guardian it certainly may be enforced by decree of a court of equity.

Finally, respondent says that, by the payment of two months' rent after the ward's death, appellants recognized respondent as their landlord and are now estopped to deny her title. The facts do not indicate that appellants recognized respondent's title by the payment of rent after the ward's death. The contract of sale was for a stated price, subject to adjustment of rents *until closing*. Besides, the general rule that a tenant is estopped to deny his landlord's title is not applicable here, because appellants claim that they have acquired title *from the landlord*. [Woods v. Rains, 104 Fed. (2d) 137; 35 C. J., p. 1246, sec. 601.]

Silvey v. Summer, 61 Mo. 253:

"A tenant cannot dispute the title of his landlord. . . . What is meant by this is that a tenant cannot set up an outstanding or antagonistic title to that of his landlord. If, however, a tenant has acquired his landlord's title, either directly or through the medium of a tax sale, . . . the rule spoken of does not apply."

For the reasons stated the judgment is reversed and the cause remanded with direction to render and enter a decree vesting full legal title to the real estate in appellants. All concur.