

# In the
# Missouri Court of Appeals
# Western District

<table>
<tr><td>BLACKWOOD, LANGWORTHY &amp;<br>TYSON, LLC,<br><br>                    Appellant,<br><br>v.<br><br>JON D. KNIPP, ET AL.,<br><br>                    Respondents.</td><td>WD81006<br><br>OPINION FILED:<br><br>JANUARY 22, 2019</td></tr>
</table>

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Mark Anthony Styles Jr, Judge**

**Before Division Three: Anthony Rex Gabbert, Presiding Judge, Alok Ahuja, Judge,**
**Victor C. Howard, Judge**

Blackwood, Langworthy & Tyson, L.C. (Appellant) appeals the circuit court's grant of judgment on the pleadings in favor of Jon D. Knipp and Linda Miller (Respondents collectively), thereby dismissing Appellant's Petition for Accounting. Appellant asserts that the trial court erred in granting Respondents' motion because Appellant's petition complied with all pleading requirements and stated a valid claim under Section 461.300,[1] Appellant had standing to bring the action, the action was brought in the proper forum, and Appellant had not waived its claims. We reverse.

---

[1] All statutory citations are to the Revised Statutes of Missouri 2016, as supplemented through 2018, unless otherwise noted.

**Background**

Walter Knipp was a resident of Jackson County, Missouri. He had three adult children, Jon Knipp, Robin Choudhury, and Linda Miller. In August 2008, Walter Knipp became the subject of a guardianship and conservatorship proceeding. Competing petitions were filed in the Probate Division of the Circuit Court of Jackson County seeking the appointment of a guardian and conservator, one filed by Jon Knipp and the other filed by Robin Choudhury. On May 5, 2009, Choudhury was appointed as guardian of the person and conservator of the estate of Walter Knipp, an incapacitated and disabled person, and letters of guardianship and conservatorship were issued to Choudhury on June 11, 2009.

Walter Knipp died testate June 8, 2011. On July 8, 2011, a decedent's estate was opened in the Probate Division of the Circuit Court of Jackson County. Jon Knipp was thereafter granted Letters Testamentary in the decedent's estate.

Shortly before Walter Knipp's death it was discovered he owned certain financial assets that had not been included in the original inventory for his conservatorship. Those assets included U.S. Savings Bonds titled in Walter Knipp's name with pay on death designations to certain of Walter Knipp's children, U.S. Savings Bonds titled in Walter Knipp's name jointly with certain of Walter Knipp's children, stock certificates titled in Walter Knipp's name jointly with his son, Jon Knipp, and certificates of deposit titled in Walter Knipp's name jointly with his two daughters. In the first "annual settlement filing" filed after Walter Knipp's death (spanning June 12, 2010 to April 5, 2012) Choudhury amended the conservatorship inventory to include these assets. The assets were never physically turned over to Choudhury.

On January 27, 2012, Appellant filed a claim against the decedent's estate "for professional services rendered" in association with administration of decedent's guardianship and

2

conservatorship estate. Appellant represented Choudhury from August 12, 2008, to approximately February 21, 2012, in the guardianship proceeding.[2]

On August 24, 2012, Appellant filed in the decedent's estate a demand for recovery of nonprobate assets, demanding pursuant to Section 461.300 that the personal representative, Jon Knipp, recover for the estate and creditors all recoverable transfers of decedent's property sufficient to satisfy claims of creditors and expenses of administration of the probate estate. Appellant demanded, in the alternative, that the personal representative bring an action for accounting against the recipients of all property of decedent transferred other than from the administration of the decedent's probate estate. Appellant also demanded that the personal representative provide knowledge related to the identity of recipients of recoverable transfers. Jon Knipp did not commence an action on behalf of the estate but filed a "Response" to Appellant's demand addressing Appellant as "Claimant," not disputing Appellant's right to make the demand under Section 461.300, and providing four and a half pages of information regarding the identity of alleged recipients of recoverable transfers and/or property belonging to and withheld from decedent's estate.[3]

On December 6, 2012, Appellant filed a Petition for Accounting in the decedent's estate against Respondents and Robin Choudhury alleging that these individuals possessed property owned by Walter Knipp immediately before his death, or were recipients of recoverable transfers

---

[2] Choudhury retained the law firm of Olsen and Talpers to complete the conservatorship, and that firm entered its appearance in the conservatorship on February 21, 2012.

[3] If the personal representative fails to commence the action, the personal representative must disclose to the qualified claimant or qualified claimants who make the written demand all knowledge within the possession of the personal representative reasonably relating to the identity of any recipient of a recoverable transfer made by the decedent. If the personal representative fails within thirty days to commence an action, any qualified claimant may commence an action for accounting. § 461.300.2.

3

of decedent's property as defined in Section 461.300, and should be required to deliver those assets so that claims and expenses of administration of the conservatorship could be paid. Jon Knipp and Linda Miller filed answers in February of 2013 denying Appellant was entitled to relief, primarily arguing that Appellant inadequately performed its duties as attorney in the conservatorship and sought unreasonable fees for that service.

On December 6, 2012, Appellant also filed an Application for Allowance of Compensation to Attorneys for Guardian and Conservator ("Application") in the conservatorship, seeking $28,578.43, for the period from August 12, 2008 through February 21, 2012.

On March 29, 2013, Choudhury filed a Final Settlement and Revised Third Amended Inventory of Property in the conservatorship. The revised inventory continued to list the stock, insurance proceeds, savings bonds, and certificates of deposit as personal property of the estate. The Final Settlement also noted that causes of action against the recipients of those items were being pursued in the decedent's estate.

On April 17, 2013, Jon Knipp filed Objections to Petition for Approval of Final Settlement, Final Settlement and Inventory. He objected, in part, to the inclusion of the stock, insurance proceedings, savings bonds, and certificates of deposit in the inventory of the conservatorship estate. Additionally, he objected to causes of action against the recipients of those items. Jon Knipp then resigned as personal representative of the decedent's estate and on April 18, 2013, the court issued Letters of Administration *De Bonis Non*[4] appointing Robin Choudhury personal representative *de bonis non*. On December 24, 2014, the court dismissed Jon Knipp's objections,

---

[4] If the executor of an estate resigns, such as here, "letters of administration of the goods remaining unadministered shall be granted" in the court's discretion to any qualified beneficiary or to any person to whom administration could have been granted if original letters had not been obtained. § 473.147. This person is called an administrator *de bonis non*. *Id.*

4

holding that Jon Knipp had no vested property interest in the decedent's estate because the decedent's will named the decedent's wife as the sole beneficiary of his estate. The court determined that Jon Knipp, therefore, had no standing to object to the settlement of the conservatorship estate because he had no vested property interest in the decedent's estate.[5] The court further stated that, even if Jon Knipp had standing to object to the final settlement, "[t]he Objections seek to litigate title to various assets which Objector alleges belonged to persons other than Walter. Such claims are the proper subject of a discovery of assets proceeding in the Decedent's Estate under § 473.340 RSMo., and may not be adjudicated via the procedure of ruling on objections to a final settlement."

On May 6, 2015, Appellant filed a Second Amended Application for Allowance of Compensation to Attorneys for Guardian and Conservator in the conservatorship. The probate court heard evidence on the Second Amended Application on August 27, 2015. On September 2, 2015, the court awarded Appellant's requested total of $20,578.43, as a class 2 claim pursuant to Section 475.211.

On February 29, 2016, Choudhury filed an Amended Final Settlement in the conservatorship case. Among the cash distributions noted in the "Paidout/Credit" column in the spreadsheet attached to the Amended Final Settlement was an entry dated 12/28/2015 described as "Proportionate amount of Legal Fees Paid to Blackwood, Langworthy, & Tyson" (sic), in the amount of $3,912.04. Other credits listed in the same spreadsheet included various causes of action against Jon Knipp and Linda Miller for alleged wrongful disposition of assets noted as "Being Pursued in the Decedent's Estate." (At the time of the final settlement, Choudhury was also

---

[5] To maintain objections to a settlement in a conservatorship, the party raising the objection must have a vested property interest in the protectee's estate. *Taylor v. Taylor*, 47 S.W.3d 377, 383 (Mo. App. 2001).

5

personal representative of the decedent estate.) On March 7, 2016, Jon Knipp filed an objection to the Amended Final Settlement. The court issued a "Judgment Dismissing Objections to Amended Final Settlement" stating that nothing had changed since the court entered its Judgment regarding Jon Knipp's earlier objections.

The circuit court entered judgment approving the conservator's Amended Final Settlement on April 1, 2016, and entered an Order of Discharge on April 5, 2016, declaring "all assets have been distributed during the administration of the estate." The court further ordered "the conservator and the sureties on the conservator's bond if any be hereby discharged."

On November 21, 2016, Respondents filed their Motion for Judgment on the Pleadings in the decedent's estate to dispose of the issues raised by Appellant's Petition for Accounting. They raised two grounds for dismissal: 1) that the remedy of "accounting" the Petition sought was not available under the statute, only a money judgment, and 2) there was no basis to pursue recoverable transfers for the payment of administrative expenses. Respondents' motion acknowledged Appellant claimed to be a "qualified claimant" of the deceased's estate and did not challenge this claim.

Appellant responded with Suggestions in Opposition to Respondents' Motion for Judgment on the Pleadings. In a Reply in support of their motion, Respondents argued that Appellant was not a "creditor" of Walter Knipp or his decedent's estate, but of Choudhury in her personal capacity or capacity as conservator, and she had been discharged from any liability as conservator.

The trial court granted Respondents' motion for judgment on the pleadings on June 30, 2017, ruling that the "primary argument of Movant is that Petitioner is not a creditor of the estate of Decedent, and therefore cannot bring an action for accounting under §461.300 RSMo." The court further ruled that, although Appellant had obtained a judgment from the court in the

6

guardianship and conservatorship estate, that claim did not automatically carry over to the decedent estate. The court additionally found: 1) The amounts due Appellants were not debts of Walter Knipp or his decedent's estate, nor liabilities of Walter Knipp arising in contract, tort, or otherwise; 2) The fees were incurred during the administration of Walter Knipp's guardianship and conservatorship estate, and not incurred by Walter Knipp himself; 3) Appellant was not a "qualified claimant" as defined by Section 461.300 and therefore had no standing to bring an action for accounting; 4) Appellant's proper recourse would have been to object to the final settlement in the guardianship and conservatorship estate; and 5) Appellant's failure to object to the final settlement in Walter Knipp's guardianship and conservatorship estate constituted waiver of its claim.

This appeal follows.

## Standard of Review[6]

We review a court's grant of judgment on the pleadings *de novo*. *Seay v. Jones*, 439 S.W.3d 881, 887 (Mo. App. 2014).

> Review of a grant of a motion for judgment on the pleadings requires this Court to decide whether the moving party is entitled to judgment as a matter of law on the face of the pleadings. For purposes of the motion, the well-pleaded facts pleaded by the nonmoving party are treated as admitted. The trial court's grant of judgment on the pleadings will be affirmed only if review of the totality of the facts pleaded by the petitioner and the benefit of all reasonable inferences drawn therefrom reveals that petitioner could not prevail under any legal theory.

*Morgan v. Saint Luke's Hosp. of Kansas City*, 403 S.W.3d 115, 117 (Mo. App. 2013) (internal quotation marks and citations omitted). "The reviewing court is primarily concerned with the correctness of the result, not the route taken by the trial court to reach it; therefore, the trial court's

---

[6] Respondents argue that Appellant's appeal should be dismissed due to briefing deficiencies in violation of Rule 84.04(d). As we prefer to resolve an appeal on the merits of the case and can ascertain Appellant's arguments despite any briefing deficiencies, we proceed with review of Appellant's claims. *See Payne v. Markeson*, 414 S.W.3d 530, 545 (Mo. App. 2013).

judgment will be affirmed if it is correct on any ground supported by the record regardless of whether the trial court relied on that ground." *Barrett v. Greitens*, 542 S.W.3d 370, 376 (Mo. App. 2017).

A party moving for judgment on the pleadings assumes the pleaded facts to be true and must show that the facts are, nevertheless, insufficient as a matter of law. *Id.* "If the petition sets forth any set of facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim and the motion to dismiss must be denied." *Underwood v. Kahala, LLC*, 554 S.W.3d 485, 493 (Mo. App. 2018) (internal quotation marks and citation omitted). "The trial court (and the reviewing court) *cannot* consider matters beyond plaintiff's petition, *unless* Rule 74.04's summary judgment procedures are affirmatively (and properly) invoked and enforced by the trial court." *Id.* (emphases original). If extrinsic matters are included, the trial court must convert the motion to one for summary judgment by providing notice that it is doing so, giving the parties reasonable opportunity to present all materials made pertinent by the trial court's invocation of Rule 74.04, and compelling adherence to the mandatory dictates of Rule 74.04 procedures for summary judgment. *Id.* Where the trial court gives no such notice and the judgment expressly grants the motion to dismiss, this is an affirmative statement that the trial court did not convert the motion and did not consider matters outside the pleadings. *Id.* at 494. (citing *Naylor Senior Citizens Housing, LP v. Sides Construction Co., Inc.*, 423 S.W.3d 238, 241 n.1 (Mo. banc 2014).

## Analysis

### Judgment on the Pleadings

Appellant argues that the trial court erred in granting Respondents' Rule 55.27 motion for judgment on the pleadings. Respondents contend the court correctly determined that Appellant was not a "qualified claimant" as defined by Section 461.300.10(3) and therefore lacked standing

8

to pursue recoverable transfers in the decedent's estate. Respondents argue that Appellant's only recovery was in the conservatorship estate and its claim was released or satisfied as a matter of law upon discharge of the conservator. Further, Respondents contend Appellant's petition failed to state a cause of action because it sought equitable relief or a traditional accounting rather than the sole remedy contemplated by Section 461.300, a money judgment.

We first note that nothing within the record or the court's judgment suggests that the court converted Respondents' Rule 55.27 motion for judgment on the pleadings to a motion for summary judgment, and neither party makes this claim. The court's Judgment states that it reviewed only "the Motion and Response filed by Petitioner, as well as oral argument from the attorneys."

The circuit court granted Respondents' motion for judgment on the pleadings on the grounds that Appellant had no standing to bring the action because Appellant was not a "qualified claimant" under Section 461.300(2). Under Section 461.300(2), only a personal representative or qualified claimant may bring an action for accounting, and a qualified claimant may only do so after making a written demand of the personal representative who thereafter fails to initiate such action. "A party has standing to sue when it has an interest in the subject matter of the suit that gives it a right to recovery, if validated." *Portfolio Recovery Assocs., LLC v. Schultz*, 449 S.W.3d 427, 434 (Mo. App. 2014). "Lack of standing cannot be waived and may be considered by the court *sua sponte*." *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 622 (Mo. App. 2009). Lack of standing, however, is determined solely on the basis of the petition. *Stander v. Szabados*, 407 S.W.3d 73, 80 (Mo. App. 2013).

Appellant alleged in its Petition for Accounting that it was a "qualified claimant" of the estate of Walter Knipp pursuant to Section 461.300(2) with authority to bring an action for accounting to enforce the obligations of alleged recipients of recoverable transfers. Appellant

9

alleged it made a written demand of the personal representative who failed to initiate the requested action. Respondents filed answers in February of 2013 generally denying all substantive allegations in the petition and contending Appellant ineffectively represented the conservatorship and requested excessive fees, but made no specific contentions that Appellant had no standing to bring the action for want of being a "qualified claimant."[7]

On November 21, 2016, nearly four years after the Petition for Accounting was filed, Respondents filed their Motion for Judgment on the Pleadings raising only two grounds for dismissal of Appellant's petition – 1) that only a money judgment was available under the statute, not the remedy of "accounting" the Petition sought, and 2) there was no basis to pursue recoverable transfers for the payment of administrative expenses. Respondents' motion acknowledged Appellant's averment that it was a "qualified claimant" of the decedent's estate and did not challenge this claim; similarly, Respondents' motion did not dispute that Appellant had a pending "Claim" against the decedent's estate.

We find that the Petition filed by Appellants alleged standing as a "qualified claimant," and neither Respondent's answer to that petition or motion for judgment on the pleadings disproved this claim. Evidence not included within the pleadings cannot be considered in determining whether a plaintiff lacks standing. *Breeden v. Hueser*, 273 S.W.3d 1, 15 (Mo. App. 2008). The

---

[7] Jon Knipp resigned as personal representative of the decedent's estate in April 2013. Thereafter, Choudhury was appointed administrator *de bonis non* with authority to then enforce the obligations of alleged recipients of recoverable transfers under Section 461.300. Choudhury simultaneously remained conservator. Choudhury's Final Settlement in the conservatorship identified the disputed assets as inventory of the conservatorship estate, with "causes of action" against the recipients of those items being turned over to the decedent's estate for recovery of that property. The record reflects that Choudhury, also a named respondent in Appellant's Petition for Accounting who filed no answer, viewed Appellant a proper party to enforce recovery of the disputed assets under Section 461.300(2) as evidenced by her acknowledgement that assets of the conservatorship were being pursued in the decedent's estate through Appellant's petition for accounting.

dismissal below was based on the pleadings and the pleadings affirmed Appellant's status as a "qualified claimant" entitled to enforce an action for accounting. To the extent the court believed from the face of the pleadings that the action was barred by lack of standing, the court erred.

We are cognizant, nonetheless, that "[t]he question of a party's standing can be raised at any time, and an appellate court may do so *sua sponte*." *Chastain v. Geary*, 539 S.W.3d 841, 848 (Mo. App. 2017) (internal quotation marks and citation omitted). As the issues decided by the trial court will remain on remand, and standing implicates a court's authority to reach substantive issues, we proceed to review the substantive issues reached by the court and raised by the parties on appeal.

**Standing**

The trial court ruled that, although Appellant had obtained a judgment from the court during the conservatorship, that claim did not automatically carry over to the decedent estate such that Appellant could pursue recoverable transfers to pay that claim. The court determined that Appellant was not a "qualified claimant" and had no standing to bring an action for accounting under Section 461.300 because: 1) The amounts due Appellants were not debts of Walter Knipp or his decedent's estate, nor liabilities of Walter Knipp arising in contract, tort, or otherwise, and 2) the fees were incurred during the administration of Walter Knipp's guardianship and conservatorship estate, and not incurred by Walter Knipp himself.

A "qualified claimant" pursuant to Section 461.300.10(3) includes a "creditor, surviving spouse, dependent child, or a person acting for a dependent child of the decedent." A "creditor" is "any person to whom the decedent is liable, which liability survives whether arising in contract, tort, or otherwise, and any person to whom the decedent's estate is liable for funeral expenses and the reasonable cost of a tombstone." § 461.300.10(1). Under Section 461.300.1, each recipient of

11

a recoverable transfer of a decedent's property "*shall be liable*" to account for a pro rata share of the value of all such property received, to the extent necessary to discharge, among other things, "claims remaining unpaid after application of the decedent's estate." "Claims" is defined in Section 472.010(3) as including "liabilities of the decedent which survive whether arising in contract, tort or otherwise, funeral expenses, the expense of a tombstone, and costs and expenses of administration."

The statutes do not define precisely what constitutes debts or liabilities of a decedent. Nevertheless, we find instances within the statutes supporting Appellant's claim that services provided to a conservatorship constitute debts and/or liabilities of the decedent surviving final settlement of the conservatorship.

<u>Section 475.320</u>

Section 475.320 contemplates expenses incurred during a conservatorship surviving as claims against a decedent's estate. Here, Walter Knipp died testate. If a protectee in a conservatorship dies with no will, and has only funeral/burial expenses, estate taxes, obligations incurred by the conservator, and expenses of administration of the conservatorship, a court "may" order that no letters of administration be granted upon his estate and "may" order those expenses paid out of the estate by the conservator. § 475.320.1. Where there is a will or "protectee dies leaving debts, *other than those payable by the conservator under subsection 1 hereof* for which his estate would be liable in an action" … "letters testamentary *shall* be granted on the estate of the deceased protectee[.]" § 475.320.2 (Emphasis added). Those subsection 1 debts of the protectee include "obligations of the protectee incurred by the conservator, as well as expenses of administration" of the conservatorship. § 475.320.1. The legislature's reference to a protectee

12

"leaving debts, other than those payable by the conservator under subsection 1" suggests our legislature considers administrative expenses of the conservatorship to be "debts" of the decedent.

Where there is a will, such as in Walter Knipp's case, there is no provision that the conservator pay those subsection 1 debts; the only statutory requirement is that letters testamentary be granted on the estate of the deceased protectee. Although contracting for funeral and burial expenses is allowed with court approval when a conservator's authority terminates upon the death of the protectee (if no person other than the estate of the ward or protectee is liable for those expenses),[8] there is no requirement the conservator must pay that contracted debt at final settlement. Funeral expenses are expressly allowed as claims against a decedent's estate. § 472.010(3).

Where there is no will and no other debt, the conservator still may only pay funeral/burial expenses, estate taxes, obligations incurred by the conservator, and expenses of administration of the conservatorship upon order of the court. § 475.320.1. This rule deviates from a conservator's general power, within certain parameters, to settle, compromise, and pay claims against the protectee or estate without court approval. § 475.130.5,6. Significantly, Section 475.320 mandates that "[i]n such case the conservator is subject in all respects and to the same extent to the liabilities of an administrator and liability on the conservator's bond continues and applies to the complete administration of the estate of the deceased protectee, including settlements as required by section 473.540." Moreover, after a protectee dies the default for administration of the estate is with a personal administrator and not a conservator.

---

[8] § 475.083.1(5).

13

Section 475.290 et al.

Pursuant to Section 475.290, conservators "shall make final settlement of their conservatorship at a time fixed by the court, either by rule or otherwise, within ninety days after termination of their authority, except for those cases where the court has ordered that no letters of administration be granted under section 475.320." The authority of the conservator terminates immediately upon the death of the protectee, subject only to "such authority as may be necessary to wind up his administration." §§ 475.083.1(5), 475.083.3.[9] The statutes do not define what winding up of an administration entails; all conservators whose authority is terminated are to make final settlement within ninety days, however, regardless of whether their authority ends because of restored competency of the protectee, death of the protectee, resignation, or revocation. § 475.290. Final settlement involves the conservator making "a just and true exhibit of the account between himself or herself and the protectee," filing the same with the court, and delivering a copy of the exhibit to the protectee, succeeding conservator, or the executor/administrator of a decedent protectee's estate.[10] *Id.*

Expenses of administration in the conservatorship "shall be paid from the property or income of the estate." § 475.125. "A person who in good faith either assists a conservator or deals with him for value in any transaction other than those requiring a court order is protected as if the conservator properly exercised the power." § 475.134. A conservator is not individually liable on a contract properly entered into in his capacity as conservator in the course of administration of

---

[9] As noted above, with approval of the court, the conservator may also contract for the funeral and burial of the deceased ward or protectee if there is no person other than the estate of the ward or protectee liable for funeral and burial expenses.

[10] The individual the exhibit is served upon necessarily depends on the reason for termination of the conservator's authority.

14

the estate unless he fails to reveal his representative capacity and identify the estate in the contract. § 475.132.1. "Any question of liability between the estate and the conservator individually may be determined in a proceeding for accounting, surcharge, or indemnification or other appropriate proceeding or action." § 475.132.4.

The real or personal property of the protectee may be sold, mortgaged, pledged, leased or exchanged by the conservator to pay, among other things, expenses and costs of administration. § 475.200. If, upon settlement of the conservator, it appears that the money on hand and anticipated income of the estate is not sufficient for the payment of various things including claims against the estate, the court *may* require a hearing to determine if property of the estate should be sold, etc. § 475.200.4. All claims against the estate, including "liabilities incurred by the conservator for the benefit of the protectee or his estate" may be filed in the probate division of the circuit court. § 475.205. During the administration of the conservatorship, it is the conservator's general duty to "adjust, settle and pay all claims due or becoming due from the protectee *so far as the protectee's estate and effects will extend*[.]" § 475.130.5 (Emphasis added). An order allowing a claim has the effect of a judgment. § 475.205. "Expenses of administration including fees of the guardian and conservator and their attorneys" are recognized claims against the estate. § 475.211; 475.010(2).[11]

If a creditor does not file a claim after proper notice, the creditor "shall be barred from participating in any disbursement ordered paid by the court *from assets then on hand*." § 475.213.2

_____

[11] Under Section 475.265, an attorney may apply for compensation for services already performed in a conservatorship at any time before final settlement. Respondents urge that, because compensation for services must be applied for prior to final settlement, a judgment rendered on any claim is dispensed with in final settlement. Section 475.265 does not go so far.

(Emphasis added). The conservator is only obligated to pay claims filed against the estate "as far as he has assets subject thereto." § 475.213.1. In classifying claims against the estate of a protectee, expenses of administration are prioritized above expenses for the reasonable support and maintenance of the protectee, as well as "all other claims which are filed against the estate as provided by law." § 475.211. The conservator shall "at the termination of the conservatorship deliver the assets of the protectee to the persons entitled thereto." § 475.130.

In reviewing these statutes, we find no requirement that all debts and claims within the conservatorship be paid in a final settlement; the only requirement is that an account be given as to disbursements, etc. § 475.290; *See also* § 475.270 which requires compliance with § 473.543. In a conservatorship payment of claims are made according to priority, and the court may direct the conservator to "pay out assets *available* for payment" and may do so proportionally if the assets are insufficient to satisfy a class. § 475.213. Settlements are made regularly, however, and there is no indication that payments may not be ongoing when a claim is not fully satisfied. Under Section 475.290, the conservator is to give the executor of a deceased protectee's estate a copy of the conservator's final settlement account with advance notice prior to settlement. "Final settlement" appears specific to each conservator and nothing within the statutes suggests that upon final settlement of an individual conservator all outstanding claims within the conservatorship are expunged.[12]

---

[12] Notably, even in a final settlement of a decedent's estate, claims are not expunged where assets of the estate are discovered that could have paid those claims. Section 473.147.2 states:

> If, after final settlement of an estate is had and the executor or administrator has been discharged, unadministered assets of the estate are discovered, letters of administration of the goods remaining unadministered, if there are unpaid allowed claims or if other good cause is shown, may be granted to those to whom administration would have been granted if the original letters had not been obtained. Any person to whom such letters are granted shall make his final settlement and be discharged as soon as possible after letters are granted.

16

Although notice of a final settlement is required to be given a succeeding conservator, the protectee, or executor of a deceased protectee's estate, there is no requirement for notice to creditors. *Id.* After examining the accounts of the conservator, correcting all errors therein, the court makes "final settlement *with the conservator*." § 475.290. The court then orders "payment of the amount found to be due, and the rendition of any effects, property, *rights or credits belonging to the protectee*, to the protectee, or to the successor of the conservator, or to the personal representative of the protectee[.]" § 475.300. The conservator may only be discharged after the protectee, successor conservator, or personal representative acknowledge satisfaction of record in the proper court of "having received all money and other estate found to be due to the estate of a deceased protectee." § 475.315.

Respondents suggest that an "estate" under a conservatorship is wholly separate from a decedent's "estate" and when debts of a conservatorship are unpaid after final settlement they disappear. While the governance of an estate under a conservatorship and the governance of a decedent's estate serve unique purposes, the character of the "estate" never changes; the estate of the protectee in a conservatorship and the estate of the protectee after death are the same. They both consist of "the real and personal property of the *decedent or ward*, as from time to time changed in form by sale, reinvestment or otherwise, and augmented by an accretions and additions thereto and substitutions therefor, and diminished by any decreases and distributions therefrom." § 472.010 (11) (Emphasis added). This definition of "estate" is found in the Probate Code's general provisions. *Id.*

### Section 473.397 et al.

Section 473.397 divides claims in a decedent's estate and statutory allowances into various classes. These include: (1) Costs; (2) Expenses of administration; (3) Exempt property, family

17

and homestead allowances; (4) Funeral expenses; (5) Debts and taxes due the United States of America; (6) Debts for medical assistance owed to the state of Missouri under section 473.398; (7) Expenses of the last sickness, wages of servants, claims for medicine and medical attendance during the last sickness, and the reasonable cost of a tombstone; (8) Debts and taxes due the state of Missouri, any county, or any political subdivision of the state of Missouri; (9) Judgments rendered against the decedent in his lifetime and judgments rendered upon attachments levied upon property of decedent during his lifetime, and; (10) All other claims not barred by section 473.360. *Id.* Where the decedent was under a conservatorship prior to death, the conservator may have entered contracts for service on behalf of the protectee, and the protectee may have had expenses related to a last sickness authorized by the conservator. Our legislature clearly understood these to be "liabilities of the decedent" pursuant to the definition of "claims" in 472.010, allowable against a decedent estate with no requirement that they be dispensed with in a conservatorship if one existed.

Similarly, under Section 475.370, if the estate of any protectee is insufficient to pay his debts, to maintain himself and family, or educate his children, his guardian or conservator may apply to the county commission of the proper county, by petition, praying for an appropriation from the county treasury. Pursuant to Section 473.398, if a decedent has been a participant of aid, assistance, care, services, or has had money expended on his behalf by the department of health and senior services, department of social services, department of mental health, *or by a county commission*, the total amount paid "shall be a debt due" from the estate of the decedent.[13] As such,

---

[13] The purpose of Section 473.398 is to allow specified agencies to recover funds expended on behalf of a deceased recipient. *In re Estate of Graham*, 59 S.W.3d 15, 22 (Mo. App. 2001). Our courts have held that such agencies are "creditors" under Section 461.300, allowing them to bring a petition for accounting. *See In re Estate of Thomas*, 743 S.W.2d 74 (Mo. banc 1988); *In re Estate of Jones*, 280 S.W.3d 647, (Mo. App. 2009); *In re Estate of*

18

a county expending funds on behalf of a protectee during a conservatorship has a statutory right to recovery of that money in the deceased protectee's estate, even though the conservatorship was clearly insufficient to pay the same.

Case Law

Case law also supports that the judgment Appellant obtained during the conservatorship did not dissolve with the closing of the conservatorship and remained an obligation of the decedent's estate.

In *Capelli v. Bennett*, 209 S.W.2d 109 (Mo. 1948), the probate court approved a contract for sale of a protectee's property and part of the purchase price was paid by buyers. The protectee died shortly thereafter, however, and before the remainder of the purchase price had been paid and the deed delivered, the executor of the estate repudiated the contract and brought suit against the buyers for rent and possession. *Id.* at 110. Ultimately, our Supreme Court ruled that the approval by the probate court of the sale of the real estate of the ward vested in the defendants an equitable title to the real estate, although the purchase price had never reached the ward's estate during his lifetime. *Id.* at 112. Although Respondent contended that a guardian had no authority to bind either the person or the estate of the ward by contract, our Supreme Court found that the guardian

---

*Hayden*, 258 S.W.3d 505 (Mo. App. 2008); *In re Estate of Macormic*, 244 S.W.3d 254 (Mo. App. 2008). Our Supreme Court in *Thomas* declared a State's claim for reimbursement from a decedent's estate of medical payments made on behalf of the decedent "a 'claim' of the sort contemplated in probate which falls within the scope of sec. 472.010(3), RSMo 1986, defining 'claims' as 'liabilities of the decedent which survive whether arising in contract, tort or otherwise.'" 743 S.W.2d at 77. We determined in *Jones* that because a Section 461.300 petition for accounting was a proceeding under Missouri's probate code and the State qualified as a "creditor" under Section 461.300.10(1), the State could utilize Section 461.300 to bring an action for accounting. 280 S.W.3d at 655. In 2018 our legislature amended Section 473.397 to expressly include "debts for medical assistance owed to the state of Missouri under section 473.398" in its prioritization of claims against the decedent's estate.

could bind a ward's estate by contract made pursuant to statute and under the orders and approval of the probate court. *Id*.

*Williams v. Vaughn*, 253 S.W.2d 111 (Mo. 1952), discussed the doctrine of equitable lien. The Court stated that the right to an equitable lien arises "when a party at the request of another advances him money to be applied, and which is applied, to the discharge of a legal obligation of that other but when, owing to the disability of the person to whom the money is advanced, no valid contract is made for its repayment." *Id.* at 115 (internal quotation marks and citations omitted). The Court gave as an example when money is advanced to a minor to pay a debt incurred for necessaries and no action at law under contract lies to recover of the minor for repayment of the money, "yet as the money was loaned to discharge a debt for which the minor was liable at law and it was used for that purpose a court of equity will charge a lien on the minor's property to repay the sum advanced." *Id.* The Court found that parties who advanced or loaned money that paid lawful claims against the ward's estate (money was borrowed to pay ward's necessities and lender sought remuneration after ward's death) "are equitably entitled to be subrogated to the rights of the parties who had lawful claims against the ward's estate to the extent that the monies advanced or loaned by respondent's paid such claims." *Id.* at 115-116. *Williams* concluded:

> 'If the guardian of an insane person may be sued in the circuit court for necessaries furnished the ward during guardianship then we see no good reason why after the death of the ward the administrator cannot be sued in the circuit court the same as the guardian, as the guardian's duties end ipso facto with the death of the ward and the administrator then becomes the personal representative, and can be sued for the obligations of the deceased.'

*Id.* at 116 (quoting *Tock v. Tock*, 120 S.W.2d 169, 172 (Mo. App. 1938).

In discussing potential challenges facing estates where a protectee under a conservatorship dies, our Southern District quoted the following from a 1937 Arizona case:

20

When a person is under guardianship both of the estate and person and subsequently dies, what portion of his estate is subject to disposal under the law fixing priorities for the estates of decedents? Is it the gross assets in the hands of the guardian at the time of death, or is it the net property left after the guardianship has been properly closed? We are of the opinion that the logical answer is that the estate of the decedent consists of whatever assets remain after the legal claims arising by virtue of the guardianship have been properly satisfied. If this were not true, there would be endless confusion created by contests between guardians on the one hand and executors or administrators on the other. The guardian might have created an indebtedness which, according to the law, was a proper and prior claim against the estate of the incompetent, and yet, by the sudden death of his ward, such claim might be utterly defeated by proceedings in the estate of the decedent. In the absence of a statute expressly declaring so unjust a rule, we are of the opinion that all debts legally incurred by the estate of an incompetent during the course of guardianship are just as much liens upon such estate as are formal mortgages thereon, and that the administrator takes the estate subject thereto.

*Estate of Livingston*, 627 S.W.2d 673, 679 n.2 (Mo. App. 1982) (quoting *State v. Greenshaw*, 50 Ariz. 436, 72 P.2d 950, 951 (1937)).[14]

We conclude that Appellant's claim survived the closing of the conservatorship and represents a "claim" pursuant to Section 472.010(3) recoverable in the decedent's estate. Appellant is, therefore, a "creditor" pursuant to Section 461.300 with authority to enforce an action for accounting under that statute.

---

[14] In *Livingston*, a claimant filed in a guardianship/conservatorship a "claim against estate" for personal services rendered the ward prior to adjudication. 627 S.W.2d at 675. Judgment was entered on the claim by the probate court and the guardian was allowed an appeal to the circuit court. *Id.* at 676. The ward thereafter died and the executors of the decedent's estate were substituted for the guardian. *Id.* The claimant, however, did not file a claim in the decedent's estate within the time frame authorized by statute. *Id.* Consequently, the circuit court found the claim barred such that assets of the decedent's estate could not be used to satisfy the judgment. *Id.* On appeal, our Southern District found that substitution of the executors for the guardian was improper under Section 475.260, however substitution was unnecessary to recover the claim because the cause of action had been reduced to final judgment and "would not abate in absence of substitution." *Id.* at 679-680. The court found the guardian continued to have authority in winding up the guardianship to represent the estate in paying claims allowed by a final judgment. *Id.* at 680. *Livingston* did not hold, however, that the claim was *required* to be dispensed with in the guardianship/conservatorship and here, unlike *Livingston*, a timely claim was filed in the decedent estate.

**Waiver**

The trial court concluded that Appellant's failure to object to the final settlement in the decedent's guardianship and conservatorship estate constituted a waiver of its claim. The court's Judgment suggests that the terms of the conservator's final settlement were such that Appellant was on notice that its claim was being completely disposed of with the closing of the conservatorship. We find no such notice.

All parties and the court were aware when the conservatorship closed that there was alleged to be property owned by the decedent prior to death that could be used to pay estate debts. Pursuant to Section 475.130, the conservator of the estate takes possession of all of the protectee's property. The conservator of the estate must make an inventory and appraisement of the estate of all the property of the protectee which comes to the possession *or knowledge* of the conservator. §§ 475.145, 473.233 (emphasis added). "The inventory shall include property as to which the protectee is a joint tenant or tenant by the entirety[.]" §475.145.[15] If, after making the first inventory and appraisement, any other real or personal estate comes to the possession "*or knowledge*" of the conservator, an additional inventory "shall" be filed. §§ 475.145, 473.240 (emphasis added). Subject to a conservator's right to possession, "the title to all such estate, and to the increment and proceeds thereof, is in the protectee and not the conservator." § 475.130.2. The conservator must protect, preserve and manage the estate, apply it as provided in the probate code, perform all other duties required by law, and at the termination of the conservatorship, deliver the assets of the protectee to the persons entitled thereto. § 475.130.1.

---

[15] In 2018, our legislature added to Section 475.145: "The inventory shall also disclose any nonprobate transferees designated to receive nonprobate transfers after the protectee's death."

The law is clear that a conservator has no authority to act as administrator or executor of a deceased protectee's estate unless appointed to do so. "[T]he death of the protectee does not convert the administration of the guardianship of the estate into an administration of a decedent's estate." *Summers v. Correll*, 817 S.W.2d 553, 555 (Mo. App. 1991). Under Section 475.290, conservators are to make final settlement of their conservatorship within ninety days of the protectee's death, with authority only to wind up their administration. Where, as here, assets of an estate become known just prior to the death of a protectee, ninety days may not be sufficient for a conservator to physically acquire those assets such that they might be physically delivered to the personal representative upon closing the conservatorship.[16] There is no requirement that such be physically delivered to an executor, however, as the conservator may upon final settlement turn over any "*rights or credits* belonging to the protectee." § 475.300. Here, in the estate inventory the conservator listed as "credits" assets belonging to the protectee prior to his death that were alleged to be improperly withheld.[17] The conservator also noted that "causes of action" were being pursued in the decedent's estate to secure possession of those assets. This was true.

We disagree that Appellant waived its pending claim within the decedent's estate by accepting partial payment in the final settlement of the conservator, and there is no indication in the record that at the time of final settlement the court, or anyone else, considered Appellant's claim expunged. The terms of the final settlement were not adverse to Appellant. The conservator only had authority to pay claims with assets then on hand and was required to promptly wind up

---

[16] Further, it is unclear whether ongoing pursuit of the physical acquisition of estate assets would constitute "winding up" of the conservator's administration.

[17] In a final settlement of a decedent estate, under Section 473.593, the court shall give "credit" to the administrator for any debt charged in the inventory as due to the estate if from any cause it was impossible for the executor or administrator to have collected the claim by the exercise of due diligence.

23

her administration. Responsibility for collection of additional assets belonging to the estate was turned over to the executor; the court approved this settlement and the executor accepted the settlement on these terms.

Notably, *Respondents* never appealed the final settlement which included the disputed property as assets of the estate. Although Jon Knipp objected to the conservator's inclusion of those assets in the final settlement, he never sought to determine title under Section 475.160 when the conservatorship was still open. (He also did not appeal the court's Judgment dismissing his objections for lack of standing.)[18] Under Section 475.160, "[a]ny conservator, protectee, creditor or other person, including a person interested in expectancy, reversion or otherwise who claims an interest in property which is claimed to be an asset of the estate of a protectee or which is claimed should be an asset of such an estate, may file a verified petition in any court having jurisdiction of such estate seeking determination of the title and right of possession thereto." Section 475.160 mirrors the discovery of assets procedure in decedent's estates under Section 473.340 and the court is to proceed on a Section 475.160 petition "in accordance with the provisions of section 473.340." "In a discovery of assets proceeding, the court's role is to determine whether specific property has

---

[18] In finding Jon Knipp had no standing, the court cited *Taylor*, 47 S.W.3d at 383, which cited *Houston v. Zaner*, 683 S.W.2d 277 (Mo. App. 1984). *Houston* concluded that a party raising an objection to a final settlement in a conservatorship proceeding had standing to object to the final settlement of the conservatorship because the objector had an actual and justiciable property interest in the estate as the primary beneficiary of the deceased protectee's will. *Id.* at 282. Section 474.010(15) defines "interested persons" as "heirs, devisees, spouses, creditors or any others having a property right or claim against the estate of a decedent being administered and includes children of a protectee who may have a property right or claim against or an interest in the estate of a protectee." Although the latter half of the definition of "interested persons," (which states that the meaning of "interested persons" may vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved) had been interpreted to mean that heirs to a protectee's estate had no standing to dispute issues regarding the administration of a conservatorship because "no one is heir to the living," *Houston* and *Taylor* concluded that an heir to a *deceased* protectee did have standing. *Id.* Here, the court concluded that Jon Knipp had no standing to challenge the final settlement because the sole "heir" to Walter Knipp's estate under his will was Walter Knipp's wife. In spite of the settlement including as estate assets property Jon Knipp claimed to be his own, Jon Knipp did not appeal the court's Judgment.

24

been adversely withheld *or claimed*." *Ryan v. Spiegelhalter*, 64 S.W.3d 302, 305 (Mo. banc 2002) (emphasis added). Hence, the conservator's claim to the disputed property as estate assets was *never challenged* under Section 475.160 although four years elapsed between the time the property was first included in the estate inventory and the conservatorship closed.[19]

"Every executor or administrator … shall take possession of all the personal property of the decedent…." § 473.263. Because the disputed property was considered part of the estate released to the executor by the conservator, the executor had a duty to take possession of that property. Section 461.300 provides a means to recover money from that property that can pay estate debts. If this disputed property consists of recoverable transfers, defined as "a nonprobate transfer of a decedent's property … and any other transfer of a decedent's property … that was subject to satisfaction of the decedent's debts immediately prior to the decedent's death," Section 461.300 mandates that each recipient of such property "shall be liable" to account for a pro rata share of the value of all such property received to the extent necessary to, among other things, discharge estate claims remaining unpaid after application of the decedent's estate.

At the time of the conservator's final settlement, Appellant had filed a claim in the decedent's estate for recovery of the balance of the Judgment not paid during the conservatorship. Appellant had also filed as a "qualified claimant" a petition for accounting to recover transfers that might expunge that claim. At the time of the final settlement, no party disputed Appellant's status as a qualified claimant. As personal representative, Robin Choudhury had a duty to recover estate

---

[19] Respondents also never filed a discovery of assets petition in the decedent's estate as was suggested by the court to be the proper recourse against inclusion of the assets in the estate inventory. We are inclined to believe the proper recourse to prevent inclusion of the assets in the conservatorship inventory would have been to pursue discovery of assets in the conservatorship. Nevertheless, a discovery of assets option may still be available in the decedent's estate, and not foreclosed by failure to file the same during the conservatorship. The conservator's authority ended upon Walter Knipp's death and the disputed property was alleged to have been discovered by the conservator only shortly before his death.

25

assets to pay estate claims. The final settlement evidences that Choudhury was essentially allowing Appellant to pursue those assets for her via a petition for accounting in the decedent's estate, in part to expunge Appellant's claim.

We find that Appellant was aggrieved by nothing within the final settlement of the conservator requiring an objection or appeal.

### Failure to State Cause of Action

Respondents contend that, even if Appellant can be considered a "qualified claimant" under Section 461.300, the court did not err in granting judgment on the pleadings because Appellant failed to state a cause of action by seeking equitable relief or a traditional "accounting" rather than the sole remedy contemplated by Section 461.300, a money judgment. Respondents contend Appellant improperly requested delivery of "all assets" necessary to discharge the claims of creditors.

"Probate pleadings are not to be judged by the strict rules of pleadings applied to a petition in the circuit court." *In re Estate of Clark*, 83 S.W.3d 699, 702 (Mo. App. 2002). "The pleadings need only give reasonable notice of the nature and extent of the claim." *Id.* at 702-703. "The general rule is that where a party seeks relief under a particular statute, he is not required to refer to the statute or use its terms literally, but he is required to plead facts which bring his case within the purview of the statute." *Id.* at 705. Here, Appellant's pleadings provided reasonable notice of the nature and extent of Appellant's Section 461.300 claim.

Further, Section 461.067 provides that unless the payment or transfer (of a nonprobate transfer) can no longer be questioned because of adjudication, estoppel or limitations, a transferee of money or property that was improperly distributed or paid, "is liable *to return* to the transferring entity or deliver to the rightful transferees *the money or property* improperly received[.]" Pursuant

26

to Section 461.031, "[p]rior to the death of the owner, a beneficiary shall have no rights in the property[.]" According to the final settlement of the conservator, the rightful transferee of at least some of the disputed property, or portions thereof, was the estate itself as these were assets belonging to Walter Knipp prior to his death that could have been used to pay claims within the conservatorship. Consequently, although Section 461.300 provides only for a monetary judgment, if this property was improperly distributed to begin with, then the transferees may very well be liable for return of the property under Section 461.067 rather than a monetary share of the value sufficient to discharge unpaid claims.

### Conclusion

We conclude that the circuit court erred in granting Respondents' motion for judgment on the pleadings. The court's Judgment is reversed, and the case remanded.


_____
Anthony Rex Gabbert, Judge


All concur.

27